804 So.2d 1087 (2001)
BALDWIN COUNTY ELECTRIC MEMBERSHIP CORPORATION et al.
v.
John LEE et al.
Aubury Fuller
v.
John Lee et al.
Aubury Fuller
v.
John Lee et al.
1991043, 1991660 and 1991659.
Supreme Court of Alabama.
June 1, 2001.
Daniel G. Blackburn and Rebecca A. Gaines of Daniel G. Blackburn, P.C., Bay Minette, for Baldwin County Elec. Membership Corp.
Fred K. Granade and Shawn T. Alves of Stone, Granade & Crosby, Bay Minette, for Aubury Fuller.
Douglas L. McCoy of Hand Arendall, L.L.C., Mobile, for Steven P. Brill.
*1088 Mary E. Murchison of Murchison & Sutley, L.L.C., Foley, for Peggy R. Vanover and John D. Taylor, Jr.
W.A. Kimbrough, Jr., and Frank Woodson of Turner, Onderdonk, Kimbrough & Howell, Mobile, for Tommie Werneth.
Floyd C. Enfinger, Jr., Montrose; and Lloyd Taylor and Narissa Nelson, Foley, for appellees.
WOODALL, Justice.
These three appeals arise out of separate actions seeking injunctive relief. The actions were brought in the Baldwin Circuit Court by Lloyd Taylor and others hereinafter (collectively referred to as "Taylor"), and John Lee and others hereinafter (collectively referred to as "Lee"), against Baldwin County Electric Membership Corporation ("Baldwin County EMC") and its trustees in their representative capacities. The actions were consolidated and proceeded to trial. The trial court granted injunctive relief, and Baldwin County EMC and the trustees appealed. Aubury Fuller, one of the trustees, appealed separately. In case no. 1991043, we reverse and render. We dismiss as moot the appeals in case no. 1991659 and case no. 1991660.
This dispute began in April or May 1998, when approximately 200 members[1] of Baldwin County EMC began circulating forms styled as "Petition[s] to Remove [Baldwin County] EMC Trustees at Special Meeting." The object of the petitions was to acquire signatures demanding a special meeting of the membership to remove and replace five of the seven Baldwin County EMC trustees, namely, Peggy Vanover, John Taylor, Jr., Tommie Werneth, Steven Brill, and Samuel Smith, Jr. To call a special meeting, the Baldwin County EMC bylaws, as well as the Alabama Business Corporation Act, Ala.Code 1975, § 10-2B-7.02(a), requires the signatures of at least 10% of the membership of the Baldwin County EMC.
Each form that was circulated consisted of three pages, the first of which stated, in pertinent part:
"The basis for the removal of the above members of the Board of Trustees of [Baldwin County EMC] is that they have authorized and participated in the formation of a corporation named BALDWIN SERVICES CORPORATION... which could compete with and adversely affect the [Baldwin County] EMC. These persons voted for and participated in the formation of BALDWIN SERVICES CORPORATION, a corporation which provided for certain current [Baldwin County] EMC Trustees being named as Trustees or Board Members of BALDWIN SERVICES CORPORATION. [Baldwin County] EMC members would not have any control or authority over these actions, assets, contracts or money controlled by BALDWIN SERVICES CORPORATION. The creation of BALDWIN SERVICES CORPORATION was for a purpose other than the benefit or advancement of [Baldwin County] EMC and its members. BALDWIN SERVICES CORPORATION could be used to divert assets of [Baldwin County] EMC and its members, and to restructure the operation of [Baldwin County] EMC and assignment of [Baldwin County] EMC employees without disclosure to, or approval by, [Baldwin County] EMC membership. These persons, through these and other actions, demonstrate that they do not understand and/or do not believe in the cooperative *1089 and princip[les] and way. These persons authorized the formation of the above named Alabama corporation and trustees Brill and Smith executed the articles of incorporation with the approval of the other persons sought to be removed."
In connection with the petition process, Taylor, on August 10, 1998, petitioned the Baldwin Circuit Court (case no. CV-98-725) for a writ of mandamus directing Baldwin County EMC "to allow [Taylor] and his agents to inspect and copy records of [Baldwin County] EMC, and to furnish [Taylor] with a current mailing list of members of [Baldwin County] EMC." On August 21, 1998, the trial court ordered Baldwin County EMC to "deliver to Plaintiffs' counsel a complete copy of the Baldwin EMC members mailing list." The trial court also retained jurisdiction "until such time as the court determine[d] that there [was] no further need to retain jurisdiction." On August 24, 1998, the petitions were submitted "in multiple parts" to defendant Smith, who was the secretary of Baldwin County EMC.
On September 1, 1998, Lee filed a complaint (CV-98-815) in Baldwin Circuit Court against EMC, Smith, and Brill.[2] The complaint alleged that Smith and Brill had breached their duty to "issue the required notice of the special meeting called for in the petition." It sought to enjoin the defendants "from continuing delay in the certification and notice of the special meeting called for in the petition." Subsequently, Lee amended his complaint to add as defendants the remaining five members of the Baldwin County EMC board of trustees.
The actions were consolidated on October 27, 1998, and were tried periodically over several months, beginning on August 30, 1999. The testimony at trial focused on whether the forms submitted by Lee and Taylor contained the requisite number of valid signatures to call a special meeting of the membership. On January 7, 2000, after receiving over 100 hours of testimony, the trial court entered a judgment holding that the number of signatures was sufficient and ordering "a special election" of the challenged trustees, to "be conducted without delay." Factually, the trial court found the total membership of Baldwin County EMC to be 33,867, making it necessary for the forms to contain no less than 3,387 valid signatures. It found that the number of valid signatures on the forms exceeded the 10% necessary to call a special meeting by 130 names.
Baldwin County EMC and four of its trustees, namely, Peggy Vanover, John Taylor, Jr., Tommie Werneth, and Steven Brill appealed (case no. 1991043). A fifth trustee, Aubury Fuller, appealed separately (case no. 1991659 and case no. 1991660).[3] Because our resolution of case no. 1991043 also disposes of case no. 1991659 and case no. 1991660, we first address case no. 1991043.

I. Case No. 1991043
Baldwin County EMC challenges a number of aspects of the court's determination that the petition was valid. However, one issue is dispositivewhether the failure of the signatories to date their signatures rendered the petition void.
The petition consisted of a compilation of the "multiple parts," which were the three-page forms circulated by various *1090 members of Baldwin County EMC. Each form contained 40 lines for signatures and addresses of the signatories. The forms provided no place to indicate the date the form was signed; therefore, none of the forms bears any date, much less a date showing the time of execution of any signature.
In this connection, Baldwin County EMC states: "No signature on the petition is dated or authenticated, and no petition page contains any proof that the signatures were signed in the presence of a witness." Brief of EMC, at 58-59. For these reasons, they argue, the petition "fails to conform," id. at 60, to § 10-2B-7.02. That section provides in pertinent part:
"(a) A corporation shall hold a special meeting of the shareholders:
". . . .
"(2) If the holders of at least 10 percent of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date, and deliver to the corporation's president or secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held, who shall, within 21 days of the receipt of such demand, cause notice to be given of the meeting to be held....
". . . .
"(b) If not otherwise fixed under Section 10-2B-7.03 or 10-2B-7.07, the record date for determining shareholders entitled to demand a special meeting is the date the first shareholder signs the demand."

(Emphasis added.)
Baldwin County EMC contends here, as it did in the trial court, that "[t]he failure of the petition circulators to obtain dates on the petition signatures renders the entire petition void." Brief of Baldwin County EMC, at 60. In response, Lee and Taylor argue only that their "petition was not filed pursuant to the Business Corporation Act," and that the dating requirement is a mere "technicality." Brief of Appellees, at 38-39. This response overlooks a number of fundamental principles.
First, a "corporation is a creature of statute, acquiring its existence and authority to act from the state." 1 Charles Keating & Gail O'Gradney, Fletcher Cyclopedia of the Law of Private Corporations § 3635, at 226 (1990) (footnote omitted) (hereinafter referred to as "Fletcher"). Provisions governing corporate operations include not only a corporation's articles of incorporation and bylaws, but also relevant sections of the statutory scheme under which the corporation exists. State ex rel. Carter v. Harris, 273 Ala. 374, 376, 141 So.2d 175, 176 (1961) ("the charter of a corporation consists of its articles of incorporation taken in connection with the law under which it was organized"). Thus, where the articles of incorporation or the bylaws conflict with the statute, the statute controls. 7A Fletcher, at 226-27 (1989).[4]
Article III, § 2, of Baldwin County EMC's bylaws provides, in pertinent part: "Special meetings of the members may be called by ... ten percentum or more of the *1091 members, and it shall thereupon be the duty of the secretary to cause notice of such meeting to be given as hereinafter provided." The bylaws, which do not require that a written demand for a special meeting be dated, conflict with § 10-2B-7.02(a)(2), which does so require. Baldwin County EMC is correct, therefore, in its contention that § 10-2B-7.02(a)(2) controls.
Moreover, Lee and Taylor overlook the significance of the failure of the bylaws to set a "record date," that is, a date certain for determining the number and identities of members entitled to demand a special meeting. Indeed, the "record date" is the specific subject matter of § 10-2B-7.07(a), which states:
"The bylaws may fix or provide the manner of fixing the record date for one or more voting groups in order to determine the shareholders entitled to notice of a shareholders' meeting, to demand a special meeting, to vote, or to take any other action. If the bylaws do not fix or provide for fixing a record date, the board of directors of the corporation may fix a future date as the record date."
(Emphasis added.) Section 10-2B-7.02(b) provides: "If not otherwise fixed under Section ... 10-2B-7.07, the record date for determining shareholders entitled to demand a special meeting is the date the first shareholder signs the demand." (Emphasis added.) The omission of the bylaws or the trustees to establish a record date triggered the application of 10-2B-7.02(b). However, because none of the signatures was dated, there was no evidence as to when the first demand was made. Therefore, the failure of Lee and Taylor to secure the dates of the signatures as required by § 10-2B-7.02(a) frustrated the application of § 10-2B-7.02(b).
This failure was not, as Lee and Taylor contend, a mere "technicality." It is fundamental. The significance of the dating requirement in § 10-2B-7.02(a) is directly linked to the record-date provision in § 10-2B-7.02(b). The record date provides the benchmark on which to identify those shareholders entitled to demand the special meeting in the first place. Indeed, there could be no valid demand for a special meeting by 10% of the members of Baldwin County EMC without establishing of a record date.
This demand was made, however, and the case tried without a record date having been established. In fact, the trial court's only criterion for a member's eligibility to demand a special meeting was membership in Baldwin County EMC at some time during the petitioning process, which it found began in "April or May 1998" and ended on August 24, 1998. Not only was the court's criterion not a "date," but it was considerably more liberal than the criterion set by § 10-2B-7.02. For example, the statute would have excluded everyone who was not a member on the date the name of the first signatory was affixed to one of the three-page forms, regardless of whether that signatory became a member later in the petition process. The trial judge's criterion included such persons.
In short, the failure to set a record date, coupled with the failure to require that the signatures be dated, frustrated all attempts to determine whether the petition contained valid signatures of 10% of the membership of Baldwin County EMC as required by the bylaws and by § 10-2B-7.02. Theoretically, it might have been possible for Lee and Taylor to establish by trial testimony an approximate date on which the first signature was affixed to the first of the three-page forms. They did not, however, attempt to do so.
*1092 It was the petitioners' burden to establish their right to demand a special meeting. Because of their failure to comply with § 10-2B-7.02(a) and -7.02(b), they did not establish such a right. The trial court erred, therefore, in ordering that a special meeting be held on the basis of the petition. The judgment of the trial court is reversed and a judgment is rendered in favor of Baldwin County EMC and four of its trustees, namely, Brill, John Taylor, Jr., Vanover, and Werneth.

II. Case No. 1991659 and Case No. 1991660
The contentions made by Fuller differ substantively from those of the other trustees. He was not among the trustees that the petitioners sought to remove from the board. His only dissatisfaction with the trial court's judgment is that he says it failed to "preserve the status quo and [failed] to guide the trustees during the time period preceding the special election." Fuller's Brief, at 15 (emphasis added). Indeed, he contends that the trial court correctly held that the petition was sufficient to require a special meeting to consider the recall of Brill, John Taylor, Jr., Vanover, and Werneth. Thus, his interest essentially parallels the interests of Lee and Taylor, the appellees.
Because we have determined that Lee and Taylor are not entitled to a special meeting on the basis of the petition submitted, Fuller's contentions are moot. We therefore dismiss the appeals in case no. 1991659 and case no. 1991660 as moot.
1991043REVERSED AND JUDGMENT RENDERED.
1991659DISMISSED AS MOOT.
1991660DISMISSED AS MOOT.
HOUSTON, SEE, BROWN, and HARWOOD, JJ., concur.
JOHNSTONE, J., concurs in the result.
LYONS and STUART, JJ., recuse themselves.
JOHNSTONE, J. (concurring in the result).
I concur in the result. The Business Corporation Act requires only that the demand or demands for a special meeting be dated, not that every signature be dated. Section 10-2B-7.02, Ala.Code 1975, allows the dating, like the delivery, to be done once and for all.
NOTES
[1] According to its bylaws, "membership" in Baldwin County EMC is acquired by applying for electric service from Baldwin County EMC and paying a membership fee.
[2] Brill was president of the board of trustees of Baldwin County EMC.
[3] While this action was pending, Samuel Smith, Jr., lost his bid for reelection at the annual membership meeting. Therefore, the claims as to him are moot, and he is not involved in these appeals.
[4] Baldwin County EMC correctly points out that it is a "public utility." See Mitchell v. Concerned Citizens of CVEC, Inc., 486 So.2d 1283, 1285 (Ala.1986) ("An electric cooperative is a `public utility'"). The Business Corporation Act applies to "public utilities ..., except to the extent, if any, that any provision of [that Act] is inconsistent with [Ala.Code 1975, § 37-6-1 et seq.] specifically applicable to [electrical cooperatives]." Section 10-2B-1.01(b).