In appeal no. 1010537, defendant Baldwin County Electric Membership Corporation ("BCEMC") appeals the attorneys' fees awarded plaintiffs Aubury L. Fuller and J. Thomas Bradley, Jr. ("Fuller-Bradley"), who defend their right to attorneys' fees on the theories of the general common benefit rule, the stockholders' derivative action common benefit doctrine, and the indemnification of directors of cooperatives *Page 948 
under § 37-6-3(16)a., Ala. Code 1975. We reverse the order of the trial court awarding attorneys' fees to Fuller-Bradley and render a judgment in favor of BCEMC.
In appeal no. 1010008, BCEMC members John Lee, A.B. Hankins, Jr., and Randy Grant("Lee-Hankins-Grant") appeal the merits of the judgment entered in Fuller-Bradley's action against BCEMC. This Court holds that, because Lee-Hankins-Grant were not parties to Fuller-Bradley's action, they lack standing to appeal the judgment entered in that case. Therefore, on motion of BCEMC, we dismiss the appeal filed by Lee-Hankins-Grant.
In appeal no. 1010338, BCEMC appeals the order of the trial court staying its own judgment in Fuller-Bradley's action to accommodate the appeal filed by Lee-Hankins-Grant. Because we are dismissing the Lee-Hankins-Grant appeal on the ground of their lack of standing to appeal the judgment in the Fuller-Bradley action, we reverse the stay of the judgment in that action and remand the cause for the trial court to vacate that stay.
The first purpose of the following chronology of substantive and procedural facts is to reveal the judicial proceedings and rulings that disentitle Fuller-Bradley to attorneys' fees in appeal no. 1010537. The second purpose of the chronology is to reveal the procedural factors that require dismissal of the appeal by Lee-Hankins-Grant in no. 1010008. The same chronology will double to serve both purposes.
In April or May 1998, about 200 members of BCEMC began circulating petitions to call a special meeting to remove and to replace five of the seven trustees on the BCEMC board of trustees. The bylaws of BCEMC and § 10-2B-7.02(a), Ala. Code 1975, require the signatures of no less than ten percent of the membership of BCEMC to call a special meeting.
On August 10, 1998, BCEMC members Lloyd Taylor and the firm of Taylor and Taylor (hereinafter collectively called "Taylor") petitioned the Baldwin County Circuit Court for a writ of mandamus directing BCEMC to permit Taylor to inspect and to copy certain records of BCEMC and to furnish Taylor with a current mailing list of the names of all BCEMC members. On August 21, 1998, the trial court ordered BCEMC to furnish Taylor with a copy of the current mailing list of the members of BCEMC. "The trial court also retained jurisdiction `until such time as the court determine[d] that there [was] no further need to retain jurisdiction.'"Baldwin County Elec. Membership Corp. v. Lee, 804 So.2d 1087, 1089 (Ala. 2001).
On September 1, 1998, BCEMC members Lee-Hankins-Grant sued BCEMC, the secretary of BCEMC, and the president of BCEMC. Lee-Hankins-Grant alleged that the defendants had breached their duty to issue a notice of the special meeting demanded in a petition signed by ten percent of the membership of BCEMC. Lee-Hankins-Grant prayed that the trial court enjoin the defendants from delaying the certification and the notice of the special meeting demanded in the petition. Lee-Hankins-Grant subsequently amended their complaint to add the remaining five members of the BCEMC board of trustees, including trustee Aubury L. Fuller, as defendants. On October 27, 1998, the trial court consolidated the actions filed by Taylor and Lee-Hankins-Grant.
On July 15, 1999, pursuant to § 37-6-9(b), Ala. Code 1975, a majority of the BCEMC board of trustees adopted a resolution amending the bylaws of BCEMC to authorize the membership to vote by mail on proposed amendments to the bylaws. *Page 949 
On July 19, 1999, in their own action, Lee-Hankins-Grant moved for an immediate hearing, "an immediate restraining Order and other injunctive relief." They challenged the validity of the July 15, 1999 vote-by-mail resolution adopted by the majority of the BCEMC board of trustees.
On July 21, 1999, Fuller-Bradley, who were members and trustees of BCEMC, filed a "Complaint For Declaratory Judgment" to determine the legality of the July 15, 1999 vote-by-mail resolution. Fuller-Bradley "request[ed] reimbursement of the costs and fees incurred in bringing this action for the benefit of the Corporation and its members."
On August 30, 1999, in Taylor's and Lee-Hankins-Grant's actions, the trial court began the trial of the claim for a special meeting for the removal and replacement of trustees.[1]
On September 1, 1999, in their own action challenging the legality of the vote-by-mail resolution, Fuller-Bradley moved for a summary judgment, which BCEMC opposed. On September 23, 1999, in their own action, Fuller-Bradley filed a "Notice of Constitutional Challenge" challenging the constitutionality of § 37-6-9(b), Ala. Code 1975, which authorizes an electrical cooperative to adopt a vote-by-mail procedure. On November 29, 1999, in Fuller-Bradley's action, the Attorney General acknowledged his receipt of the challenge to the constitutionality of § 37-6-9(b), waived further service of pleadings and discovery on him, and waived "the right to be heard."
On January 7, 2000, in Taylor's and Lee-Hankins-Grant's actions, the trial court found that the petition to BCEMC to a call a special meeting contained the signatures of at least ten percent of the membership of BCEMC. The trial court ordered a "special election" for the positions of the trustees whose elections had been challenged.
On January 13, 2000, Taylor and Lee-Hankins-Grant moved the trial court to award them attorneys' fees in their respective actions.
On January 28, 2000, in Taylor's and Lee-Hankins-Grant's actions, defendant-trustee Fuller, without Bradley, moved to alter or to amend the January 7, 2000 order to establish a procedure for the method of voting for trustees in the special meeting and "to preserve the status quo and to guide the Trustees during the period preceding the special election" to prevent the "Trustees from replacing the [BC]EMC's capable and experienced management." On February 4, 2000, BCEMC moved to alter or to amend the January 7, 2000 order to correct that order to reflect the number of signatures of qualified members established by the evidence.
On February 14, 2000, in Taylor's and Lee-Hankins-Grant's actions, the trial court amended its January 7, 2000 order to require the special meeting for the election of trustees to be held in accordance with the bylaws of BCEMC in effect before July 1999. The trial court further stated:
 "a. . . . All other claims and issues in Plaintiffs' request for immediate restraining order and injunctive relief filed July 16, 1999 are here-by severed and transferred to and consolidated with Fuller v. Baldwin County Electric Membership Corporation, CV-99-704 Circuit Court of Baldwin County.
 "b. Plaintiff's request for assessment of an attorney fee is under submission to the Court. Such issue is hereby severed from this proceeding and this Order constitutes a final appealable order. The Court considers the request for attorney *Page 950 
fees to be an issue separate and apart from the other issues litigated in this case and the grant or denial of attorney fees will be addressed in the pending case of Fuller v. EMC, CV-99-704." (Emphasis added.)
The trial court did not amend the case action summary in Fuller-Bradley's action to add Taylor and Lee-Hankins-Grant as plaintiffs or other parties in that action. Nor did the trial court order Taylor and Lee-Hankins-Grant added as plaintiffs or other parties to Fuller-Bradley's action. On February 18, 2000, in Taylor's and Lee-Hankins-Grant's actions, BCEMC and four of its trustees appealed the judgment ordering the special meeting for the election of trustees.
On February 28, 2000, the trial court heard Taylor's and Lee-Hankins-Grant's motions for attorneys' fees. The parties from all three actions were represented at the hearing.
On March 27, 2000, in Taylor's and Lee-Hankins-Grant's actions, the trial court amended the January 7, 2000 order to "retain jurisdiction of the conduct of the special meeting called by the members and the special election in connection therewith ordered by the Court in the January 7, 2000 [order] for the sole purpose of enforcing that order and insuring fairness and equity." The trial court denied all other postjudgment relief requested by all parties.
On May 8, 2000, in Taylor's and Lee-Hankins-Grant's actions for the special meeting for the election of trustees, defendant-trustee Fuller appealed the March 27, 2000 order denying his January 28, 2000 postjudgment motion.
On May 12, 2000, in Fuller-Bradley's action challenging the vote-by-mail statute, § 37-6-9(b), and resolution, the trial court ordered BCEMC to pay interim "attorney fees and expenses incurred" by Taylor's and Lee-Hankins-Grant's attorneys "in cases CV-98-725 [Taylor's action], CV-98-815 [Lee-Hankins-Grant's action,] and CV-99-704 [Fuller-Bradley's action], forthwith." The trial court ordered the parties and the parties' attorneys to "file with the clerk . . . an itemization of all time and expenses related to the above referenced cases and the total amount of money (whether fees or expenses) received by all attorneys relative to the above cases."
On August 20, 2000, in this Court, Fuller filed his brief on appeal in his appeals of the March 27, 2000 order in Taylor's and Lee-Hankins-Grant's actions. In his brief, Fuller contended that the trial court erred "in failing to preserve the status quo and to guide the trustees during the time period preceding the special election and to require that no trustee is excluded from board meetings, discussions, or decisions." He argued that the trial court correctly enforced the petition to BCEMC to call a special meeting to remove and replace five of the seven trustees on the BCEMC board of trustees and that this Court should affirm the January 7, 2000 order in Taylor's and Lee-Hankins-Grant's actions.
On June 1, 2001, this Court issued its opinion in Baldwin CountyElectric Membership Corp. v. Lee, supra. We held that, because Taylor and Lee-Hankins-Grant had failed to set a "record date" for determining the stockholders' right to demand a special meeting and had failed to date the signatures on the petition, the trial court erred in ordering a special meeting for the election of trustees. We reversed the judgment of the trial court and rendered a judgment in favor of BCEMC and its trustees. Because we held that Taylor and Lee-Hankins-Grant were not entitled to a special meeting "on the basis of the petition submitted," we dismissed Fuller's appeals as moot. Lee, 804 So.2d at 1092. *Page 951 
On August 10, 2001, in Fuller-Bradley's action challenging the vote-by-mail statute, § 37-6-9(b), and resolution, BCEMC moved for a summary judgment and submitted a brief in support of its motion. BCEMC contended that § 37-6-9(b) authorized its board of trustees to amend the bylaws to authorize voting by mail on amendments to the bylaws. BCEMC contended also that § 37-6-9(b) was constitutional. On August 16, 2001, in Fuller-Bradley's action, "declin[ing] to grant the relief requested by Petitioners," the trial court stated, in pertinent part:
 "The Court believes that it is guided by § 37-6-9(b)[, Ala. Code 1975,] which provides as follows:
 "`Voting shall be in person, but if the bylaws so provide, may also be by proxy or by mail, or both; provided, however, notwithstanding any contrary provision in the bylaws of the cooperative, the board of trustees, by resolution, may authorize voting by mail on bylaw adoption, amendment, or repeal and, in such event, the board of trustees shall also specify the procedures to be followed in such mail voting.'
 "With regard to the `procedures' referred to in the paragraph above, the Court notes that the Bylaws provide for a majority vote for trustees, however, where no candidate receives a majority vote, there is no procedure in place for a run-off election.
 "Accordingly, the Court denies Petitioner's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment."
That same day, in Fuller-Bradley's action, Lee-Hankins-Grant purported to respond to the summary judgment motion filed by BCEMC.
On August 31, 2001, Fuller-Bradley moved for an award of attorneys' fees in their own case. On September 5, 2001, Taylor moved to intervene as a plaintiff in Fuller-Bradley's action, and to amend, to vacate, or to correct the August 16, 2001 judgment sustaining the validity of the vote-by-mail statute, § 37-6-9(b), and resolution, in Fuller-Bradley's action to address the issue of attorneys' fees in Taylor's action. On September 10, 2001 BCEMC moved to alter or to amend the August 16, 2001 judgment to dispose of all issues raised in that action by denying the attorneys' fees motions filed by Taylor and Lee-Hankins-Grant. BCEMC also opposed the attorneys' fees motion filed by Fuller-Bradley.
On September 14, 2001, Lee-Hankins-Grant purported to appeal the August 16, 2001 judgment in Fuller-Bradley's action. On September 17, 2001, the trial court conducted a hearing on Fuller-Bradley's attorneys' fees motion. On September 20, 2001, BCEMC filed an opposition to Taylor's motion to intervene in Fuller-Bradley's action. On October 10, 2001, the trial court denied Taylor's motion to intervene. On October 23, 2001, in Fuller-Bradley's action, on Lee-Hankins-Grant's motion, the trial court stayed execution of the August 16, 2001 judgment validating the vote-by-mail statute, § 37-6-9(b), and resolution, pending appellate review of that judgment. In a separate order, holding that Fuller-Bradley "conferred a substantial benefit upon [BCEMC], its trustees, and members," the trial court awarded Fuller-Bradley attorneys' fees of $22,357.97 in Taylor's and Lee-Hankins-Grant's consolidated actions, and of $35,000 in Fuller-Bradley's own action.
On November 5, 2001, in Fuller-Bradley's action, BCEMC moved to vacate the stay on the ground that Lee-Hankins-Grant were not parties to Fuller-Bradley's action. BCEMC also appealed the order staying execution of the August 16, 2001 *Page 952 
judgment. On November 30, 2001, BCEMC appealed the order awarding attorneys' fees to Fuller-Bradley. On January 9, 2002, BCEMC moved this Court to dismiss Lee-Hankins-Grant's appeal on the ground that, because Lee-Hankins-Grant were not parties to Fuller-Bradley's action, Lee-Hankins-Grant lacked standing to appeal the August 16, 2001 judgment entered in Fuller-Bradley's action.
 Appeal No. 1010537 — BCEMC's Appeal of Attorneys' Fees
On appeal, BCEMC asserts two issues:
 "1. Did the trial court abuse its discretion by awarding attorney's fees to [Fuller-Bradley] in their declaratory judgment action challenging the validity of a resolution passed by [BC]EMC's Board of Trustees and a subsequent amendment to the [BC]EMC bylaws where (1) Section 37-6-3(16)a.[, Ala. Code 1975,] allowing a cooperative to indemnify a director who is made a party to a suit, does not apply when the director brings the suit, and (2) the lawsuit was resolved against [Fuller-Bradley] and conferred no benefit on [BC]EMC and served only to delay implementation of a valid resolution and bylaw and hinder the actions of the Trustees?
 "2. Did the trial court abuse its discretion by awarding attorney's fees to [Fuller-Bradley] for `defending' in related actions [filed by Taylor and Lee] where Fuller and Bradley were not a parties to [Taylor's action], Bradley was not a party to [Lee's action], and Fuller did not defend in [Lee's action]?"
BCEMC contends that Fuller-Bradley are not entitled to attorneys' fees in Fuller-Bradley's own action against BCEMC because, BCEMC says, (1) the indemnification provisions of § 37-6-3(16)a., Ala. Code 1975, benefit only a director who has been sued and (2) Fuller-Bradley's action did not prevent an abuse of power or confer a substantial benefit on BCEMC.
Fuller-Bradley first contend that they are entitled to attorneys' fees under the "common benefit doctrine."
 "Under the American rule, the parties to a lawsuit bear the responsibility of paying their own attorney fees. However, the law recognizes certain exceptions to this rule, and attorney fees are recoverable when authorized by statute, when provided by contract, or when justified by special equity. Blankenship v. City of Hoover, 590 So.2d 245 (Ala. 1991); Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238
(Ala. 1985). In the latter instance, attorney fees may be awarded where the plaintiff's efforts are successful in creating a fund out of which the fees may be paid, or when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff. City of Ozark v. Trawick, 604 So.2d 360 (Ala. 1992); Brown v. State, 565 So.2d 585 (Ala. 1990); Bell v. Birmingham News Co., 576 So.2d 669 (Ala.Civ.App. 1991). These have been termed the `common fund' and `common benefit' exceptions to the American rule.
 "The common benefit exception is at issue here; however, the trial court, concluding that the efforts of the plaintiffs' attorneys did not create a benefit common to all the citizens of Birmingham, denied the plaintiffs' request for an award of attorney fees. Whether to award attorney fees is within the sound discretion of the trial court, and the ruling on that question will not be reversed on appeal absent an abuse of discretion. Battle, supra; Tuscaloosa County Comm'n v. Deputy *Page 953 Sheriffs' Ass'n of Tuscaloosa County, 632 So.2d 442
(Ala. 1993)."
Ex parte Horn, 718 So.2d 694, 702 (Ala. 1998) (emphasis added). Because Fuller-Bradley's action did not create a common fund or benefit the general public, Fuller-Bradley are not entitled to attorneys' fees under the general common fund or common benefit rule.
Fuller-Bradley next argue that they are entitled to attorneys' fees under the common benefit doctrine applied in the context of a stockholders' derivative action because, they say, in filing and prosecuting their action, a stockholders' derivative action seeking a declaratory judgment, they conferred a substantial benefit on BCEMC. Fuller-Bradley argue that they conferred a substantial benefit on BCEMC in that, they say, they successfully obtained a declaration of the validity of the July 15, 1999 vote-by-mail resolution adopted by the BCEMC board of trustees.
"In a stockholder's derivative action, when the stockholder confers a substantial benefit upon the corporation, the stockholder bringing the derivative action is entitled to recover a reasonable attorney fee."American Family Care, Inc. v. Irwin, 571 So.2d 1053, 1062 (Ala. 1990).
Although Fuller-Bradley initially asked the trial court to declare the legality or illegality of the July 15, 1999 vote-by-mail resolution adopted by the BCEMC board of trustees, they later asserted that §37-6-9(b) (the statute enabling the adoption of the July 15, 1999 vote-by-mail resolution) was unconstitutional and that the July 15, 1999 vote-by-mail resolution was void. The trial court did not declare §37-6-9(b) unconstitutional. Rather, declining to hold § 37-6-9(b) unconstitutional and the adoption of the July 15, 1999 vote-by-mail resolution by the BCEMC board of trustees void, the trial court entered a summary judgment in favor of BCEMC. Thus, Fuller-Bradley did not receive a favorable ruling by the trial court on their only requested relief.
Fuller-Bradley claim that they conferred a common benefit precipitating a declaration of the validity of the vote-by-mail resolution even though the declaration was adverse to their challenge. In Allen v. Lloyd's ofLondon, 975 F. Supp. 802 (E.D.Va. 1997), unsuccessful litigants, the "Names," likewise sought such a reading of "benefit" after having failed in their efforts to obtain a favorable ruling. The unsuccessful litigants argued that they had obtained "`timely guidance' on the important and disputed issue whether the Equitas interests that Lloyd's was offering to the Names were securities under the securities laws of the United States, so that Names could properly evaluate the nature and status of the investment they were being offered." 975 F. Supp. at 809. The court rejected this argument as "illogical because it is at odds with the fundamental meaning of the term `benefit.'" Id. The court described such benefit as "largely illusory and speculative, and . . . far from the `substantial benefits' required to invoke the common benefit doctrine."Allen, 975 F. Supp. at 809. The court cut to the chase with the following observation:
 "Under the plaintiff-Names' `timely guidance' theory, whenever an issue raised in litigation is resolved adversely, the losing litigant would earn attorney's fees simply for having learned that he was wrong. That, of course, is in complete derogation of the American Rule."
Allen, 975 F. Supp. at 809 n. 8.
Accordingly, the holding of the trial court that Fuller-Bradley "conferred a substantial benefit upon [BC]EMC, its trustees, and members" is unsupported by the record. Consequently, the trial court *Page 954 
erred in awarding Fuller-Bradley attorneys' fees for conferring such a benefit.
Fuller-Bradley next contend that they are entitled to attorneys' fees as indemnity pursuant to § 37-6-3(16)a., Ala. Code 1975, because, they say, in filing their declaratory judgment action to determine the validity of the July 15, 1999 vote-by-mail resolution, they acted in good faith and in a manner they reasonably believed to be in the best interest of BCEMC.
 "`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.' IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). In interpreting a statute, '[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.' Id. See also Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala. 1999); Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998); Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687, 689 (Ala. 1991); Town of Loxley v. Rosinton Water, Sewer Fire Protection Auth., Inc., 376 So.2d 705, 708 (Ala. 1979). `If the language of [a] statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.' IMED Corp., 602 So.2d at 346."
Ex parte Cove Props., Inc., 796 So.2d 331, 333-34 (Ala. 2000).
Section 37-6-3(16)a., Ala. Code 1975, provides:
 "A cooperative shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed claim, action, suit, or proceeding, whether civil, criminal, administrative, or investigative, including appeals (other than an action by or in the right of the cooperative), by reason of the fact that he is or was a director, trustee, officer, employee, or agent of the cooperative, or is or was serving at the request of the cooperative as a director, trustee, officer, partner, employee, or agent of another cooperative, corporation, partnership, joint venture, trust, or other enterprise, against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred by him in connection with such claim, action, suit, or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the cooperative or other entity, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any claim, action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the cooperative, and with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful." (Emphasis added.)
Fuller-Bradley filed only one action. In awarding them attorneys' fees, the trial court accepted Fuller-Bradley's assertion that their action was a stockholders' derivative action. On appeal, BCEMC concedes that Fuller-Bradley's action was properly a stockholders' derivative action. Therefore, without dispute, Fuller-Bradley's action was a stockholders' derivative action. *Page 955 
Section 37-6-3(16)a. is unambiguous. The Legislature authorized cooperatives to reimburse "a director, trustee, officer, employee, or agent of the cooperative" for legal fees, expenses, and judgments incurred by him or her as a result of his or her serving in such capacity. Section 37-6-3(16)a. does not mention stockholders and does not authorize a cooperative to "indemnify" stockholders. A stockholder does not sue as a director, trustee, officer, employee, or agent of the cooperative. Because Fuller-Bradley filed as stockholders, they were not entitled to attorneys' fees pursuant to § 37-6-3(16)a. for bringing their action.
BCEMC contends that Fuller-Bradley are not entitled to attorneys' fees in Taylor's action or in Lee-Hankins-Grant's action. Specifically, BCEMC contends that, because Fuller-Bradley were not defendants or other parties in Taylor's action, Fuller-Bradley are not entitled to attorneys' fees in that action. Fuller-Bradley do not contend that they are entitled to attorneys' fees in Taylor's action. Thus, the trial court erred in awarding Fuller-Bradley attorneys' fees in Taylor's action.
BCEMC contends further that, because Bradley was not a party to Lee-Hankins-Grant's action, Bradley is not entitled to attorneys' fees in Lee-Hankins-Grant's action. Although Fuller was a defendant in Lee-Hankins-Grant's action, Bradley was not a defendant or other party in that action. Fuller-Bradley do not contend that Bradley is entitled to attorneys' fees in Lee-Hankins-Grant's action. Thus, the trial court erred in awarding Bradley attorneys' fees in Lee-Hankins-Grant's action.
BCEMC contends that Fuller is not entitled to attorneys' fees in Lee-Hankins-Grant's action, except for the attorneys' fees BCEMC has already paid Fuller's attorneys for defending him in that action before the trial court, because, BCEMC says, the attorneys' fees that Fuller incurred as a result of his appeals of the March 27, 2000 order did not accrue "from work performed in defense of that action." BCEMC's brief, p. 22. BCEMC paid attorneys' fees to Fuller's attorneys for all work they performed in defense of Fuller before the trial court. BCEMC contends that the attorneys' fees that it did not pay Fuller, $22,357.97, resulted from Fuller's appealing the March 27, 2000 order denying his postjudgment motion in Taylor's and Lee-Hankins-Grant's actions, and from Fuller's arguing on appeal that the trial court correctly found that the plaintiffs had presented sufficient signatures to call a special meeting to remove and replace trustees, and correctly ordered a "special election" of trustees.
Fuller contends that he is entitled to attorneys' fees for defending himself in Lee-Hankins-Grant's action because BCEMC authorized Fuller to hire separate legal counsel to represent him and because, he says, he "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the cooperative," § 37-6-3(16)a.
Although § 37-6-3(16)a. states that "[a] cooperative shall have power to indemnify any person who was or is a party . . . to any . . . action . . . by reason of the fact that he is or was a director [or] trustee," that section does not mandate that a cooperative must indemnify a trustee. Subparagraphs c. and d. of § 37-6-3(16) provide, in pertinent part:
 "c. To the extent that a . . . trustee . . . of a cooperative . . . has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in paragraphs a. and b. of this subdivision, or in defense of any *Page 956 claim, issue, or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith, notwithstanding that he has not been successful on any other claim, issue or matter in any such action, suit, or proceeding.
 "d. Any indemnification under paragraphs a. and b. of this subdivision (unless ordered by a court) shall be made by the cooperative only as authorized in the specific case upon a determination that indemnification of the director, trustee, officer, employee, or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in paragraphs a. and b. of this subdivision. Such determination shall be made (i) by the board of directors or trustees by a majority vote of a quorum consisting of directors or trustees who were not parties to, or who have been wholly successful on the merits or otherwise with respect to, such claim, action, suit, or proceeding, or (ii) if such a quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors or trustees so directs, by independent legal counsel in a written opinion, or (iii) by the shareholders." (Emphasis added.)
Because we dismissed Fuller's appeals of the March 27, 2000 order denying his postjudgment motion as moot, Lee, 804 So.2d at 1092, Fuller was not successful in his arguments on appeal that the trial court correctly ordered a special meeting for elections of trustees and that the trial court incorrectly denied his postjudgment motion to maintain the status quo pending the special meeting and to provide guidance to the trustees on the management of BCEMC until the voting at the special meeting. Accordingly, § 37-6-2(16)c. does not mandate that BCEMC indemnify Fuller for the attorneys' fees that he incurred as a result of his two unsuccessful appeals in Taylor's and Lee-Hankins-Grant's actions. Although BCEMC had the authority to indemnify Fuller if a majority of the BCEMC board of trustees found that he had met the applicable standard of conduct in § 37-6-3(16)a. and b., BCEMC chose not to indemnify him. Because indemnification for Fuller's attorneys' fees for his appeals in Taylor's and Lee-Hankins-Grant's actions was discretionary, not mandatory, the trial court erred in ordering BCEMC to pay Fuller attorneys' fees of $22,357.97 for those appeals.
Accordingly, in appeal no. 1010537, we reverse the order of the trial court awarding attorneys' fees to Fuller-Bradley and render a judgment in favor of BCEMC.
 Appeal No. 1010008 — Lee-Hankins-Grant's Appeal of the Merits of the Judgment in Fuller-Bradley's Action
Lee-Hankins-Grant appeal the merits of the judgment validating the vote-by-mail statute, § 37-6-9(b), and resolution in Fuller-Bradley's action. Specifically, they appeal the holding by the trial court that § 37-6-9(b) validly authorized the adoption of the July 15, 1999 resolution by the BCEMC board of trustees to allow voting by mail on amendments to the bylaws. Appellee BCEMC has moved this Court to dismiss the appeal on the ground that Lee-Hankins-Grant were not parties to Fuller-Bradley's action or to the judgment that they attempt to appeal. BCEMC contends that Lee-Hankins-Grant lack standing to appeal the judgment entered in Fuller-Bradley's action. The motion is well-taken and is due to be granted.
The case action summary does not identify Lee-Hankins-Grant as plaintiffs or other parties in the Fuller-Bradley action. The trial court did not enter any order adding, or purporting to add, Lee-Hankins-Grant *Page 957 
as parties in Fuller-Bradley's action. Accordingly, the record on appeal does not support Lee-Hankins-Grant's contention that they were parties in Fuller-Bradley's action. Consequently, Lee-Hankins-Grant lack standing to appeal any portion of the judgment entered in Fuller-Bradley's action. Therefore, we dismiss Lee-Hankins-Grant's appeal.
 Appeal No. 1010338 — The Appeal by BCEMC of the Stay of Judgment Entered in Fuller-Bradley's Action
BCEMC appeals the stay of the August 16, 2001 judgment entered by the trial court in Fuller-Bradley's action. The trial court entered the stay to accommodate Lee-Hankins-Grant's appeal of the merits of that judgment. Because we are dismissing the Lee-Hankins-Grant appeal of the August 16, 2001 judgment in Fuller-Bradley's action, the purpose for the stay no longer exists. Therefore, we reverse the stay of judgment and remand this cause to the trial court to vacate the stay of judgment.
1010008 — APPEAL DISMISSED.
1010338 — REVERSED AND REMANDED.
1010537 — REVERSED AND JUDGMENT RENDERED.
Moore, C.J., and See, Brown, Harwood, and Woodall, JJ., concur.
Stuart, J., recuses herself.
[1] The trial was conducted over several months.