Suzy Strickland Harbison appeals from a summary judgment in favor of the defendant, Bonnie Sue Strickland. We reverse and remand.
 I.
Bonnie Sue Strickland is the manager and a 17% equity owner of the Strickland Family Limited Liability Company ("the LLC"). The LLC was formed by Bonnie Sue Strickland and her now deceased husband, Jake Strickland, on August 4, 2000, as part of their estate plan.[1] The LLC was formed under the Alabama Limited Liability Company Act, § 10-12-1 et seq., Ala. Code 1975 ("ALLCA").
In accordance with their estate plan, the Stricklands, on December 24, 2000, transferred 83% of the equity shares of the LLC to their daughter Suzy Strickland Harbison.[2] The Stricklands retained a 17% interest in the LLC and acted as comanagers of the LLC for the next two years.
On January 17, 2002, Jake Strickland died. Under the operating agreement for the LLC, Bonnie Sue Strickland became the sole manager of the LLC and retained the 17% equity in the LLC she had held in common with Jake. Harbison retained 83% of the equity shares in the LLC.
On December 24, 2002, Strickland conveyed three parcels of real property belonging to the LLC to her son David Strickland. David is not a member of the LLC. Strickland transferred the parcels of real property for an amount Harbison believes was less than fair market value. Harbison sued Strickland, claiming that Strickland had breached her fiduciary duty to the LLC under the ALLCA and that she had violated the terms of the operating agreement when she failed to make managerial decisions based on the best interests of the LLC and the equity owners.
Strickland moved for a summary judgment. After a hearing, the trial court entered a summary judgment in favor of Strickland, stating in pertinent part:
 "This Court must look to the four corners of the governing document in determining whether the defendant breached her fiduciary duty to the LLC in selling LLC property to her son. In the present case the governing document is the operating agreement of the Strickland Family, LLC. In interpreting the LLC operating agreement this Court finds that Defendant did not breach her fiduciary duty to the LLC when Defendant sold LLC property to David. . . .
 "In interpreting the intent of the operating agreement through a four corners *Page 388 
interpretation, this Court finds that the purpose of the LLC operating agreement was for distribution of the assets of the Defendant and Jake Strickland. This Court takes these purposes into account when in [sic] determining fiduciary duty. The Plaintiff applies a fiduciary standard as would be applicable to a for-profit business. However, the operating agreement clearly states that this LLC is not for profit:
 "`The managers do not, in any way guarantee . . . a profit for the Equity Owners from the operations of the Company. Decisions with respect to the conduct, dissolution and winding up of the business of the company shall be made in the sole discretion of the Equity Owners and such other matters as the Managers consider relevant. There shall be no obligation on the part of the Managers to maximize financial gain or to make any or all of the Company Property productive.' Strickland Family LLC Operating Agreement, Article VI, Section 6.4.1"[3]
The trial court further ruled that because the LLC was ostensibly created for a nonprofit purpose, namely, for the distribution of LLC property to the Stricklands' children, Strickland was free to distribute the real property of the LLC as she saw fit. The trial court stated:
 "Plaintiff argues that the property should have been sold at fair market value based on the most recent appraisal. However, in accordance with the operating agreement defendant had authorization to dispose of the property in anyway she saw fit. This included disposing of the property by gift. . . . Whether Defendant sold the LLC assets for $1.00 or $1,000,000, or decided to give the property away, Defendant had authority to do so in her capacity as manager of the LLC."
 II.
"We review a trial court's summary judgment de novo, giving the judgment no presumption of correctness." Baldwin v. Branch,888 So.2d 482 (Ala. 2004) (citing Nationwide Ins. Co. v. Rhodes,870 So.2d 695, 696 (Ala. 2003)). A summary judgment is proper when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56, Ala. R. Civ. P.; Ex parte Atmore Cmty. Hosp.,719 So.2d 1190, 1193 (Ala. 1998); Booker v. United American Ins.Co., 700 So.2d 1333, 1334 (Ala. 1997). Because our resolution of this appeal turns on purely legal questions, we need not at this point determine the factual issues, if any.
Harbison argues that the trial court erred in referring only to the four corners of the document in interpreting the operating agreement. Harbison contends that the ALLCA imposes upon members and managers of limited liability companies fiduciary duties that cannot be eliminated by the adoption of an operating agreement. Thus, Harbison argues, by failing to incorporate the fiduciary duties mandated by the ALLCA into the operating agreement, the trial court has committed *Page 389 
reversible error. This is an issue of first impression in this State.
It is well-settled in Alabama that a corporation is a "creature of statute." Baldwin County Elec. Membership Corp. v. Lee,804 So.2d 1087, 1090 (Ala. 2001) (quoting 1 Charles Keating Gail O'Gradney, Fletcher Cyclopedia of the Law of PrivateCorporations § 3635 at 226 (1990)). A "corporation is . . . subject to valid, appropriate measures of control, surveillance, and regulation government may impose. . . ." Fairhope Single TaxCorp. v. Melville, 193 Ala. 289, 305, 69 So. 466, 471 (1915). "[T]he charter of a corporation consists of its articles of incorporation taken in connection with the law under which it was organized. . . ." State ex rel. Carter v. Harris, 273 Ala. 374,376, 141 So.2d 175, 176 (1961). "Provisions governing corporate operations include not only a corporation's articles of incorporation and bylaws, but also relevant sections of the statutory scheme under which the corporation exists." BaldwinCounty Elec. Membership Corp., 804 So.2d at 1090. Additionally, "where the articles of incorporation or the bylaws conflict with the statute, the statute controls." Id.
The Legislature has imposed on corporations and partnerships fiduciary duties that cannot be waived.[4] In Brooks v.Hill, 717 So.2d 759, 764 (Ala. 1998), we stated: "`The statute [§ 10-2A-71, Ala. Code 1975] constitutes a more specific statutory expression of the general fiduciary duty owed by the directors and officers to shareholders under the Alabama Business Corporation Act.'" (Quoting Fulton v. Callahan, 621 So.2d 1235,1246-47 (Ala. 1993) (emphasis omitted).) We have similarly held that partners are bound by the fiduciary duties provided by statute. Cox v. F S, 489 So.2d 516, 518 (Ala. 1986).
Like corporations and limited partnerships, limited liability companies are creatures of statute. §§ 10-12-1 to 10-12-61, Ala. Code 1975; see also McGee v. Best, 106 S.W.3d 48, 57
(Tenn.Ct.App. 2002) ("An LLC is a creature of statute, and any duty which members owe must be set forth in the statute."). Therefore, in interpreting an operating agreement for a limited liability company, the Court must look to the ALLCA.
In 1997 the Legislature added subsections (e) through (l) to § 10-12-21, Ala. Code 1975, a part of the ALLCA. Those subsections provide that a member owes a duty of loyalty to the LLC.[5] *Page 390 
Section 10-12-21, Ala. Code 1975, imposes these same duties on managers,[6] plus the following additional burdens:
 "(l)The articles of organization or operating agreement may modify the duties contained in subsections (e) through (k) but may not provide for the following:
 "(1) Unreasonably restrict a right to information or access to records under Section 10-12-16;
 "(2) Eliminate the duty of loyalty under subsection (f) or subsection (e) of 10-12-36 . . .;
 "(3) Unreasonably reduce the duty of care under subsection (g) or subsection (e) of Section 10-12-36;
 "(4) Eliminate the obligation of good faith and fair dealing under subsection (h), but the operating agreement may determine the standards by which the performance of the obligation is to be measured, if the standards are not manifestly unreasonable."
Thus, the plain language of § 10-12-21(l), Ala. Code 1975, does not allow an operating agreement for a limited liability company to unreasonably restrict a member's right to information, to eliminate a manager's duty of loyalty, or to unreasonably reduce the duty of care as defined in § 10-12-36, Ala. Code 1975.[7] *Page 391 
We hold that operating agreements of limited liability companies, like those of corporations and limited partnerships, incorporate the provisions of the statutes that allow for the creation of such agreements. Thus, the trial court erred in failing to look past the "four corners" of the document to determine Strickland's fiduciary obligations, if any, to the LLC and its members. On remand the trial court is to determine whether Strickland breached the fiduciary duties imposed on her by the ALLCA.
 III.
Harbison also argues that the trial court erroneously concluded that it was within Strickland's authority under the operating agreement to "dispose of the [LLC] property in any way she saw fit," because the LLC is "not for profit." The trial court's interpretation of the operating agreement depends on its finding that the purpose of the LLC was to distribute the Stricklands' assets. The trial court apparently relied on Strickland's testimony that, regardless of what the operating agreement actually provided, her "intent was to give their two children David Strickland . . . and the Plaintiff, Suzy Strickland Harbison, each one-half of what was left of their estate assets."
Operating agreements of limited liability companies serve as contracts that set forth the rights, duties, and relationships of the parties to the agreement. See Love v. Fleetway Air Freight Delivery Serv., L.L.C., 875 So.2d 285 (Ala. 2003). "[I]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation." Kinmon v. J.P. King Auction Co., 290 Ala. 323,325, 276 So.2d 569, 570 (1973) (citing Todd v. Devaney,265 Ala. 486, 92 So.2d 24 (1957)). "Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach." Lilley v. Gonzales,417 So.2d 161, 163 (Ala. 1982). "`[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state." Turner v. West Ridge Apartments, Inc., 893 So.2d 332
(Ala. 2004) (quoting Ex parte Dan Tucker Auto Sales, Inc.,718 So.2d 33, 36 (Ala. 1998)).
Article III of the operating agreement clearly states that "[t]he company is organized to make a profit, increase wealth and provide a means for the Equity Owners to become knowledgeable of, manage and preserve the Company Property." This language indicates that the trial court's ruling suggesting that the LLC was meant to serve as a "nonprofit" vehicle and that Strickland could therefore dispose of the property as she wished is not supported by the terms of the operating agreement. Indeed, the very provision that the trial court relies upon to support its ruling — Article VI, Section 6.4.1 — authorizes the manager of the LLC to make business decisions for the LLC, "based on the best interest of the LLC, [and] the best interests of the Equity Owners." Article VI, Section 6.3.3, further provides:
 "Notwithstanding any other provisions of this section 6.3 to the contrary, neither the Managers nor any Member or Members shall have the authority to amend this Operating Agreement or take any action that would have a Material Adverse Effect on a similarly situated *Page 392 
group of Equity Owners . . . without the consent of Equity Owners. . . ."
The trial court's finding that Strickland could dispose of the property of the LLC as she saw fit is irreconcilable with the language of the operating agreement that requires Strickland to consider the best interests of the LLC and the other equity owner, Harbison, before making any business decisions regarding the LLC. Strickland has not produced evidence indicating that she considered the interests of the LLC before she sold the real property. On remand, the trial court is to determine whether Strickland violated her duties as manager of the LLC, under the plain language of the operating agreement.
 IV.
The summary judgment is reversed and the case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and JOHNSTONE, HARWOOD, and STUART, JJ., concur.
[1] The estate plan also included a will and various trust instruments, none of which are relevant to the present case.
[2] After this dispute arose, Bonnie Sue Strickland testified that neither she nor her deceased husband had actually intended to transfer such a large portion of the shares of the LLC to Harbison. However, the Stricklands' tax attorney had sent them letters explaining the transaction. Further, Bonnie Sue Strickland testified that she signed the assignment to Harbison on December 24, 2000. The assignment expressly provided that "[t]he managers hereby consent to the foregoing assignment of [the shares of the LLC] to [Harbison]." The assignment also provided that "Bonnie Sue Strickland hereby assigns, transfers, and sets over all of her right, title and interest in [the LLC] to [Harbison]." "[A] person who signs a contract is on notice of the terms therein and is bound thereby, even if he or she fails to read the document." Locklear Dodge City, Inc. v. Kimbrell,703 So.2d 303, 306 (Ala. 1997).
[3] The trial court's order omits significant language from the middle sentence quoted above from the operating agreement. That sentence of Article VI, Section 6.4.1, of the operating agreement reads as follows:
 "Decisions with respect to the conduct, dissolution and winding up of the business of the Company shall be made in the sole discretion of the Managers based on the best interest of the Company, the best interests of the Equity Owners, and such other matters as the Managers consider relevant."
(Omitted language emphasized.)
[4] See § 10-2B-2.02, Ala. Code 1975, allowing the corporate charter to include a clause limiting the liability of directors,except liability for
 "(A) the amount of a financial benefit received by a director to which he or she is not entitled; (B) an intentional infliction of harm on the corporation or the shareholders; (C) a violation of Section 10-2B-8.33; (D) an intentional violation of criminal law; or (E) a breach of the director's duty of loyalty to the corporation or its shareholders."
See also § 10-8A-103, Ala. Code 1975, discussing the effect of the partnership agreement on fiduciary duties:
"(b) The partnership agreement may not:
". . . .
"(3) eliminate the duty of loyalty . . .
". . . .
"(4) unreasonably reduce the duty of care. . . ."
[5] "(e)In a limited liability company managed by its members under subsection (a) of Section 10-12-22, the only fiduciary duties a member owes to the company or to its other members are the duty of loyalty and the duty of care imposed by subsections (f) through (g).
"(f) A member's duty of loyalty to a member-managed limited liability company and its members is limited to each of the following:
 "(1) To account to the limited liability company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the limited liability company's business or derived from a use by the member of the limited liability company's property, including the appropriation of the limited liability company's opportunity.
 "(2) To refrain from dealing with the limited liability company in the conduct or winding up of the limited liability company's business as or on behalf of a party having an interest adverse to the limited liability company.
 "(3) To refrain from competing with the limited liability company in the conduct of the limited liability company's business before the dissolution of the limited liability company.
"(g) A member's duty of care to a member-managed limited liability company and its other members in the conduct or winding up of the limited liability company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law.
"(h) A member shall discharge the duties to a member-managed company and its other members under this chapter or under the operating agreement and exercise any rights consistently with the obligation of good faith and fair dealing.
"(i) A member of a member-managed company does not violate a duty or obligation under this chapter or under the operating agreement merely because the member's conduct furthers the member's own interest."
[6] "(k) If the management of a limited liability company is vested in a manager or managers pursuant to subsection (b) of Section 10-12-22, each of the following applies:
 "(1) The only duty a member who is not also a manager owes to the company or to the other members solely by reason of being a member is to not disclose or otherwise use information described in subsection (b) of Section 10-12-16, whether or not obtained under the authority of subsection (b) of Section 10-12-16, to the detriment of the company or the other members.
 "(2) A manager is held to the same standards prescribed for members in subsection (f) through (i).
 "(3) A member who pursuant to the operating agreement exercises some or all of the rights of a manager in the management and conduct of the company's business is held to the standards of conduct in subsections (f) through (i) to the extent that the member exercises the managerial authority vested in a manager by this chapter.
 "(4) A manager is relieved of liability by law for violation of the standards prescribed by subsections (f) through (i) to the extent of the managerial authority delegated by the operating agreement."
[7] The "Reporter's Comments as amended by Act 97-920" following § 10-12-21(l), Ala. Code 1975, provide further clarification: "The added rules are based on the fiduciary rules contained in the Uniform Limited Liability Company Act (1995) . . . § 409." The comment to § 409 of the Uniform Limited Liability Company Act (1996) provides:
 "An operating agreement may not waive or eliminate the duties or obligation, but may, if not manifestly unreasonable, identify activities and determine standards for measuring the performance of them."