This is a contract action brought by N.J. Cervera, a lawyer, to enforce a contingent fee contract between Cervera and his client, Jeff Johnson. The trial court, after an ore tenus hearing, entered judgment for Cervera in the amount of $80,000, plus $21,628.96 in interest, from which Johnson appeals. We reverse and remand.
In early 1981, Jeff Johnson and his paternal grandfather met with attorney G.A. Lindsey to discuss the pending contest of the will of Morris A. Prestwood, Johnson's maternal grandfather. Johnson, the executor of Prestwood's will, valued the estate at $400,000 and inquired of Lindsey what fee he would charge for defending the will.
Lindsey testified that he "quoted them a fee of $50,000 in the case. And then they indicated they didn't have the availability of that kind of money outside the will being successfully defended. And I quoted them a fee of a third of the proceeds of the — whatever was gained to them from that estate."
On March 21, 1981, Johnson and his grandfather visited the office of Cervera to discuss the defense of Morris Prestwood's will. Cervera prepared a document which Johnson signed and which read, in part:
"FEE CONTRACT
"READ CAREFULLY *Page 258 
"ONE
 "I, Jeffrey Louis Johnson /s/, hereby employ Cervera and Folmar, Attorneys, in the following matter or proceeding:
"Defend the will of Morris Prestwood /s/.
"TWO
 "His attorney fee is as follows: 20% gross value of the Morris Prestwood estate. If defense unsuccessful then there would be no fee. /s/"
Prior to the date set for trial, the contestants offered to settle the contest if Johnson would pay them $200,000. The contestants' second offer was to settle for a payment of $100,000. Johnson refused both offers. After the jury had been impanelled, the contestants made a final offer to settle the contest for a payment to them of $25,000. Johnson, on the advice of counsel, accepted this offer and the litigation ended.
During approximately the next three years Cervera attempted to collect his fee from Johnson, claiming $80,000 (20% of the $400,000). During this same time, Johnson sold some timber to pay the $25,000 settlement and attempted to borrow money to pay the estate taxes and Cervera's fee.
Cervera testified that he thought he and Johnson had finally agreed on a plan whereby Cervera would finance the $80,000 for three years at 12% interest. After several attempts to have Johnson come into his office to execute a note and mortgage as security for the financing, Cervera wrote a letter to Johnson requesting that Johnson come in and sign the documents. In that letter Cervera gave Johnson a deadline of October 15, 1983, to contact Cervera or Cervera would "have to consider other alternatives." When Johnson did not respond, Cervera filed suit for breach of contract.
Each party claims support for his respective position in the terms of the contingent fee contract. Johnson's testimony disclosed the opposing contentions of the two parties:
 "Q. Did you, after you had agreed to pay the $25,000, ever make any statement to Mr. Cervera as to whether or not you owed him any money?
 "A. Yes sir. We got in several discussions and I went in two or three times; and it kept getting worse and worse where we were having words. So I just quit.
 "Q. Now tell me what — tell the court what those discussions were.
 "A. Well, it was over his fee. I felt like that I didn't owe him anything because of the contract. And he said that I still did owe his fee."
Johnson argues that he "lost" $25,000 to the contestants, and, therefore, because he was able to settle the case rather than proceeding to a trial where Cervera would have had to "defend" the will, Johnson owed Cervera nothing.
Cervera counters by noting the numerous pre-trial procedures in which he engaged in preliminary defenses of Morris Prestwood's will and of Johnson's position as executor of the will. Therefore, maintains Cervera, because the bulk of the estate was protected by a favorable settlement resulting from Cervera's services on behalf of Johnson and in defense of the contested will, Cervera was successful in defending the will of Morris Prestwood.
It is apparent from the judgment in favor of Cervera that the trial court agreed with Cervera's interpretation of the contingent fee contract and its application to these circumstances. It was not, however, within the authority of the trial court to make the finding upon which its judgment was necessarily based.
Whether a contract is ambiguous is a question of law for determination by the trial court. Where, however, as here, the terms of the contract are clear and certain, the court's duty becomes that of simply determining the meaning of those terms. This duty does not include the authority to construe unambiguous contract terms to mean anything except what is set out in plain language. P S Business, Inc. v. SouthCentral Bell Telephone Co., *Page 259 466 So.2d 928, 931 (Ala. 1985). See, also, Haddox v. FirstAlabama Bank of Montgomery, 449 So.2d 1226 (Ala. 1984);Kinnon v. Universal Underwriters Insurance Co.,418 So.2d 887 (Ala. 1982); Michigan Mutual Liability Co. v.Carroll, 271 Ala. 404, 123 So.2d 920 (1960).
Cervera strenously argues that his efforts were responsible for the successful defense of the Morris Prestwood will, which was the ultimate goal of the contingent fee contract. Therefore, he says, to deny him his 20% fee would be unconscionable. However, "we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair." Lilley v. Gonzales, 417 So.2d 161,163 (Ala. 1982). See, also, Lee v. Cochran, 157 Ala. 311,47 So. 581 (1908).[1]
Even under what may seem to be the most compelling circumstances, the trial court may not "refine away the terms of the contract that are expressed with sufficient clarity to convey the intent and meaning of the parties." Kinnon v.Universal Underwriters Ins. Co., 418 So.2d at 888. "It is not a function of the courts to make new contracts for the parties, or raise doubts where none exist." CommercialUnion Ins. Co. v. Rose's Stores, 411 So.2d 122, 124
(Ala. 1982).
Accepting the argument advanced by Cervera that the contingent fee contract was clear and unambiguous, we nonetheless find that the contract does not provide for the circumstances which did in fact occur. It is perfectly clear that the only two contingencies visualized in the drafting and execution of the contingent fee contract — winning or losing the will contest case — both contemplated atrial. Neither by the original terms of the contract nor by supplemental terms which could have been negotiated and added at the time of settlement, did the parties attempt to address a third contingency — a settlement without a trial. Simply stated, the terms of the contract do not address the circumstance of a settlement. There was no "meeting of the minds" between Cervera and Johnson on the subject of Cervera's compensation in the event of a settlement.
The trial court, then, was acting outside its authority in "rewriting" the contract by interpreting it to fit a circumstance not provided for within the "four corners" of the contract. See Kinnon, supra; and Commercial UnionIns. Co., supra.
We hold, therefore, that the trial court erred in interpreting the contract to allow for the contingency of a settlement of the Morris Prestwood will contest. Cervera, then, is entitled to a fee which equates the reasonable value of the services he rendered Johnson in defense of the Morris Prestwood will; or, stated another way, Cervera may recover a fee determined by the usual standard of quantum meruit. The trial court's determination of Cervera's fee will be based upon independent evidence adduced at a hearing, taking into consideration that, as a result of the settlement: 1) Johnson received $25,000 less than the value of the estate, and 2) Cervera gained the assurance that an otherwise contingent event (his client's receiving all or the great majority of the estate) had become a certainty and that he no longer ran the risk of getting nothing. For a discussion of the factors to be considered in fixing an appropriate fee under these circumstances, see Peebles v. Miley, 439 So.2d 137
(Ala. 1983).
REVERSED AND REMANDED WITH INSTRUCTIONS.
SHORES, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., concurs specially.
[1] Even more compelling is the fact that the contract in question was drafted by Cervera. Therefore, even if there were an ambiguity in the terms of the contract, it is a fundamental principle of contract law that instruments are construed against the drafting party. Colonial Baking Co. v. PineDale, Inc., 436 So.2d 856 (Ala. 1983).