810 So.2d 744 (2001)
Ex parte LIFE INSURANCE COMPANY OF GEORGIA.
(Re Military Insurance Specialists, Inc. v. Life Insurance Company of Georgia).
1990932.
Supreme Court of Alabama.
May 11, 2001.
Dissenting Opinion on Denial of Rehearing July 13, 2001.
*745 Richard P. Decker of Decker & Hallman, Atlanta, Georgia; and H.E. Nix, Jr., of Nix, Holtsford & Vercelli, P.C., Montgomery, for petitioner.
Stephen W. Drinkard and M. Adam Jones of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery. (Brief in support of application for rehearing filed by Rhon E. Jones of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery) for respondent.
STUART, Justice.
This Court granted this petition for certiorari review of the Court of Civil Appeals' judgment reversing a summary judgment for Life Insurance Company of Georgia ("Life of Georgia"). See Military Ins. Specialists, Inc. v. Life Ins. Co. of Georgia, 810 So.2d 732 (Ala.Civ.App.1999).
Military Insurance Specialists, Inc. ("MIS") hired Tom Donahey to develop a supplemental health-insurance policy that would be offered by MIS to the Civilian *746 Health and Medical Program of the Uniformed Services ("CHAMPUS"). In July 1994, pursuant to an "Exclusive Marketing Agreement" (the "Agreement"), the parties agreed that Life of Georgia, which is a subsidiary of the ING America Life Corporation ("ING"), would underwrite the CHAMPUS policy through its health-insurance division, Associated Doctors Senior Services Division ("Associated Doctors"). The Agreement also provided that MIS would be Life of Georgia's general agent "to recruit and recommend for appointment independent insurance agents to solicit applications for the CHAMPUS policy" and that MIS would be the exclusive marketing agent for the CHAMPUS policy. The Agreement expressly permitted Life of Georgia to withdraw from the sale of any policy upon its providing MIS with written notice.
MIS developed a marketing plan for the CHAMPUS policy and created computer programs to be used in selling and administering the policy. Donahey and MIS's president, James L. Lane, used MIS's contacts to recruit agents to sell the CHAMPUS policy throughout the United States.
When Bob St. Jacques became ING's president in the fall of 1994, he initiated an evaluation of ING's corporate strategies with regard to its subsidiaries, including Life of Georgia. In January 1995, ING considered eliminating Life of Georgia's Associated Doctors Division and its health-insurance products by selling Associated Doctors' assets and dissolving it as a business entity. During a February 1995 meeting, St. Jacques met with Lynn Taylor, Associated Doctors' president, and Darryl Harris, Associated Doctors' vice president and chief actuary, and discussed the possibility of selling Associated Doctors. Life of Georgia hired an actuarial firm to establish the value of Associated Doctors and hired a consulting firm to identify potential purchasers.
By April 1995, Union Fidelity Life Insurance Company had completed a "due diligence" study of a possible purchase of the assets of Associated Doctors, and it had begun negotiations with Life of Georgia.
In May 1995, Harris and a Life of Georgia representative met with Donahey and another MIS representative to discuss the sales of the CHAMPUS policy. During this meeting, MIS was not told of Life of Georgia's decision to possibly sell Associated Doctors.
Instead of selling Associated Doctors, Life of Georgia dissolved Associate Doctors, and Union Fidelity, pursuant to a contract with Life of Georgia dated June 29, 1995, agreed to administer the currently effective health-insurance policies that had been sold by Associated Doctors, including the CHAMPUS policies. On June 29, 1995, Life of Georgia sent a letter to its "entire field force" stating that Life of Georgia had decided to stop selling health insurance through Associated Doctors, that no new applications for health insurance through Associated Doctors would be accepted or processed after July 20, 1995, and that Union Fidelity would administer the Associated Doctors'"block of business", including the CHAMPUS policies. Under the contract between Life of Georgia and Union Fidelity, MIS agents would continue to receive commissions for all CHAMPUS policies sold before July 20, 1995.
MIS had heard rumors before June 29, 1995, about the possible dissolution of Associated Doctors, and Lane had asked Taylor what would happen if Associated Doctors ceased doing business. Taylor responded by saying that the CHAMPUS program would be retained and administered by Life of Georgia. Taylor testified *747 that as of March 1, 1995, he knew that Associated Doctors was going to be dissolved. Taylor also admitted that he had continued to encourage MIS to recruit agents and to market the CHAMPUS policy after a decision had been made in February 1995 to investigate the possibility of selling Associated Doctors.
Harris also assured Donahey and other MIS representatives that MIS was "going to be okay." Harris, however, maintained that the final decision to dissolve Associated Doctors was not made until June 29, 1995, and that MIS was notified on that date.
MIS sued Life of Georgia, Taylor, and Union Fidelity, alleging breach of contract, fraud, tortious interference with a business relationship, misappropriation of trade secrets, conspiracy, fraudulent suppression, and conversion. Pursuant to the parties' stipulation, the trial court dismissed all claims against Union Fidelity. MIS voluntarily dismissed all claims against Life of Georgia and Taylor except the claims alleging breach of contract and fraudulent suppression. The trial court entered a summary judgment for Taylor on both claims.
Additionally, the trial court entered a summary judgment for Life of Georgia on the breach-of-contract claim.[1] The court, however, concluding that Life of Georgia had failed to make a prima facie showing that it was entitled to a summary judgment on MIS's fraudulent-suppression claim, denied the motion for summary judgment on that claim.
Pursuant to Rule 54(b), Ala.R.Civ.P., MIS moved for an order certifying as final the summary judgment for Life of Georgia on MIS's breach-of-contract claim. Life of Georgia filed a motion asking the court, also pursuant to Rule 54(b), to certify as final the ruling on the breach-of-contract claim, and also asking for a statement as required by Rule 5, Ala.R.App.P., to seek permission to appeal the order denying the summary judgment on the fraudulent-suppression claim. The trial court granted both motions; thus, MIS appealed from the summary judgment for Life of Georgia on the breach-of-contract claim, and Life of Georgia filed a notice of appeal from the denial of its summary-judgment motion on MIS's fraudulent-suppression claim.
This Court transferred the appeals, pursuant to § 12-2-7(6), Ala.Code 1975, to the Court of Civil Appeals. On July 24, 1998, the Court of Civil Appeals affirmed the summary judgment for Life of Georgia on the breach-of-contract claim, without an opinion. Military Ins. Specialists, Inc. v. Life Ins. Co. (No. 2970030), 757 So.2d 488 (Ala.Civ.App.1998)(table). (The Court of Civil Appeals had previously dismissed Life of Georgia's appeal.)
In October 1998, MIS moved for a clarification of the trial court's order with regard to the period during which MIS claimed it had incurred loss or damage as a result of Life of Georgia's alleged fraudulent suppression. Life of Georgia responded to MIS's motion for clarification and renewed its motion for summary judgment on MIS's fraudulent-suppression claim. The trial court granted Life of Georgia's renewed motion for summary judgment on the fraudulent-suppression claim and denied MIS's motion for clarification.
MIS appealed. The Court of Civil Appeals reversed the summary judgment for Life of Georgia and remanded, holding that MIS had produced sufficient evidence *748 to create a genuine issue of material fact as to whether Life of Georgia owed a duty to MIS to disclose the decision to sell Associated Doctors and to cease taking applications for CHAMPUS policies; whether Life of Georgia's failure to disclose this information induced MIS to act, or not to act, to its detriment; and whether MIS was damaged as a result of Life of Georgia's failure to disclose.
Life of Georgia petitioned this Court for certiorari review to consider this question:
"[W]hether a court can place on an insurance company an additional unwritten or unlegislated duty to disclose to its agent a decision to withdraw a particular policy from sale, when the Agreement between the parties explicitly provides that the insurance company may withdraw a policy for sale at any time upon written notice."
(Life of Georgia's brief to this Court at p. 7.)
"`"Summary judgment [for a defendant] is proper when there is no genuine issue of material fact as to any element of a cause of action, and the defendant is entitled to a judgment as a matter of law. If there is [substantial] evidence ... of every element of a cause of action, summary judgment is inappropriate."' Ex parte General Motors Corp., 769 So.2d 903, 908 (Ala. 1999), quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989)(Houston, J., concurring specially)[.]"
Ex parte Ledford, 761 So.2d 990, 992-93 (Ala.2000). In a summary-judgment case, this Court reviews the record in a light most favorable to the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Section 6-5-102, Ala.Code 1975, defines "fraudulent suppression":
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
To establish a claim of fraudulent suppression, a plaintiff must prove by substantial evidence that the defendant was under a duty to disclose an existing fact of which it had knowledge; that it suppressed the fact by concealment or nondisclosure; that the suppression induced the plaintiff to act or to refrain from acting; and that the acting or refraining from acting resulted in damage to the plaintiff. Ex parte Dial Kennels of Alabama, Inc., 771 So.2d 419 (Ala.1999); Foremost Ins. Co. v. Parham, 693 So.2d 409, 423 (Ala. 1997).
Life of Georgia contends that MIS did not produce evidence indicating that Life of Georgia was under a duty to disclose to MIS the planned change in Life of Georgia's Associated Doctors Division and the change in the sale and administration of the CHAMPUS policy.
"Generally, mere silence does not constitute fraud. However, § 6-5-102, Ala. Code 1975, establishes two situations in which a duty to speak could arise: `from the confidential relations of the parties or from the particular circumstances of the case.' The [plaintiffs] do not contend that their relationship with [the defendant] was a confidential one. Therefore, we must determine whether a duty to speak arose from the circumstances of this case. In ascertaining whether the circumstances of the case created a duty to disclose, `we must consider a number of factors: 1) the relationship of the parties; 2) the relative knowledge of the parties; 3) the value of the particular fact; 4) the plaintiff's *749 opportunity to ascertain the fact; 5) customs of the trade; and 6) other relevant circumstances.' [State Farm Fire & Casualty Co. v.] Owen, 729 So.2d [834], 842-43 [ (Ala.1998)]. Moreover, we must examine the relationship or circumstances at the time of the alleged suppression. Id."

State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 324 (Ala.1999). "This Court has often ruled that there is no duty to disclose facts when information is not requested," Bulger v. State Farm Mut. Auto. Ins. Co., 658 So.2d 425, 426 (Ala.1995); however, the duty may arise from a request for information. Jewell v. Seaboard Indus., Inc., 667 So.2d 653 (Ala.1995). Silence in the face of a request for information regarding a material fact is a "relevant circumstance," and, although our cases recognize that "an obligation to disclose does not arise where the parties to a transaction are knowledgeable and capable of handling their affairs" (Trio Broadcasters, Inc. v. Ward, 495 So.2d 621, 624 (Ala.1986)), even in an arm's-length transaction between parties fully capable of protecting their own interests a duty to disclose will arise when the information has been specifically requested. Ex parte Ford Motor Credit Co., 717 So.2d 781 (Ala.1997). See also, Ex parte Farmers Exchange Bank, 738 So.2d 24 (Ala.2000).
Acknowledging that a duty to disclose can arise from a confidential relationship between the parties, the Court of Civil Appeals held that because the representatives of MIS and Life of Georgia "were experienced and knowledgeable in the insurance field and were capable of protecting their interests in an arm's-length transaction," there was no confidential relationship between these parties that would support a finding of a duty to disclose. 810 So.2d at 739, citing Holdbrooks v. Central Bank of Alabama, N.A., 435 So.2d 1250 (Ala.1983), quoting 15A C.J.S. Confidential (1967). However, the Court of Civil Appeals further held, in light of the particular circumstances of the case, that MIS had presented sufficient evidence to create a genuine issue of material fact as to whether Life of Georgia owed MIS a duty to disclose Life of Georgia's plan to sell the assets of Associated Doctors and to transfer the administration of its health-insurance division, including the CHAMPUS policies, to Union Fidelity. We disagree.
"In evaluating the question whether [the defendant] had a duty to speak, we must consider a number of factors: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."
State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 842-43 (Ala.1998).
As the Court of Civil Appeals noted, the record suggests that Life of Georgia and MIS were in an "arm's-length" relationship. Additionally, the evidence indicates that the representatives of MIS "were experienced and knowledgeable in the insurance field and were capable of protecting their interests." 810 So.2d at 739. The relationship of the parties was explicitly clarified in the Agreement, which provided that Life of Georgia could withdraw from the sale of any policy of insurance upon written notice to MIS. Clearly, Life of Georgia had superior knowledge of the fact that it intended to sell or to dissolve Associated Doctors and that that action would affect Associated Doctors' administration of the CHAMPUS policies. However, "`[s]uperior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information.' Surrett v. TIG Premier Ins. Co., *750 869 F.Supp. 919, 925 (M.D.Ala.1994)." State Farm Fire & Cas. Co. v. Owen, 729 So.2d at 843. Despite the testimony of Donahey about the value of the information, in light of the terms of the contract between MIS and Life of Georgia the value of the knowledge of the possible sale of Associate Doctors is minimal. Indeed, under the contract, Life of Georgia could terminate the sale of any policy at any time.
The record indicates that representatives of MIS did inquire as to the legal status of Associated Doctors and that Life of Georgia was not forthright regarding its plans for Associated Doctors. Before MIS was formally notified by Life of Georgia, MIS learned of the possibility that Life of Georgia planned to dissolve Associated Doctors. Because MIS's CHAMPUS policy was underwritten and administered by Associated Doctors, the prospect of a change in the structure of Associated Doctors prompted MIS representatives to specifically inquire of Life of Georgia representatives whether the rumors were true and, if so, what would happen to MIS and its CHAMPUS policy. Life of Georgia responded by assuring MIS that it "would be okay." Further, Life of Georgia continued to encourage MIS to market the CHAMPUS policy at the same time Life of Georgia was negotiating with Union Fidelity and others regarding the dissolution of Associated Doctors. On June 29, 1995, Life of Georgia finally notified MIS that Associated Doctors had been dissolved and that the CHAMPUS policy would not be sold after July 20, 1995.
We conclude that MIS's inquiries did not create a duty to disclose, given the Agreement between the parties. MIS expressly agreed that Life of Georgia could withdraw a policy from sale at any time, as long as Life of Georgia provided MIS with written notice. Therefore, in the Agreement MIS had effectively foreclosed any duty Life of Georgia might have had to disclose upon direct inquiry. If the terms of the Agreement had not been as clear, it would be appropriate to impose a duty to disclose in response to a direct inquiry. While we do not condone Life of Georgia's responses upon direct inquiry, we do not find in this situation that Life of Georgia had a duty to disclose. Cf. Ex parte Ford Motor Credit Co., supra, 717 So.2d at 787 ("[w]hile the law still requires, even in the present adversarial world of commercial transactions, that direct questions be responded to truthfully and accurately, the law also generally allows a business to keep confidential its internal operating procedures").
The parties had previously determined in the negotiation of the Agreement that with written notice Life of Georgia could terminate the sale of any policy at any time for any reason. The record indicates that Life of Georgia, pursuant to the Agreement, notified MIS when it decided to terminate its health-insurance division and to transfer the administration of that division's policies to Union Fidelity. In light of the terms of the Agreement, we conclude that Life of Georgia effectively eliminated any duty Life of Georgia might have had to disclose this information before it gave the notice. While we recognize that MIS presented expert testimony indicating that the customs of the trade required Life of Georgia to disclose the potential sale of Associated Doctors, it appears to this Court that MIS entered into an Agreement that was below industry standards. MIS, by its own actionsnot Life of Georgiaplaced MIS in a disadvantageous situation. MIS's expert witness's testimony, in light of the other considerations, did not constitute evidence of "such weight and quality that fair-minded persons ... [could] reasonably infer the existence" of fraud. See West v. Founders *751 Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)(defining "substantial evidence"). In light of the Agreement between the parties, we conclude that, despite MIS's direct inquiry about Associated Doctors and the testimony with regard to the customs of the trade, Life of Georgia, as a matter of law, had no duty to disclose the possible sale of Associated Doctors.
On review of a summary judgment, this Court views the evidence in the same manner as did the trial court. Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). Here, the evidence, considered under these particular circumstances and viewed in a light most favorable to MIS, indicates that as a matter of law Life of Georgia had no duty to disclose. To uphold MIS's claim, this Court would have to rule that Life of Georgia had a duty to disclose any potential change in circumstance despite the terms of the Agreement. To impose such a duty would violate the principles of contract law.
"As the Court stated in Milton Construction Co. v. State Highway Dep't, [568 So.2d 784 (Ala.1990)], the state constitution protects contractual obligations from impairment by the legislature or the judiciary, and the right of freedom of contract is a cherished one that courts are bound to protect. At 17 Am.Jur.2d Contracts § 178 (1991), these principles are stated as follows:
"`The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain. Since the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts of justice is to maintain and enforce contracts rather than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. Rules which say that a given agreement is void as being against public policy are not to be extended arbitrarily, because "if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be enforced by courts of justice."'"
Sutton v. Epperson, 631 So.2d 832, 835 (Ala.1993).
Life of Georgia raises other issues, but, because we hold that Life of Georgia had no duty to disclose, we need not address them.
The trial court properly entered the summary judgment for Life of Georgia on MIS's claim alleging fraudulent suppression. The judgment of the Court of Civil Appeals is reversed, and this cause is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, SEE, and BROWN, JJ., concur.
LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., dissent.

On Application for Rehearing
STUART, Justice.
APPLICATION OVERRULED.
MOORE, C.J., and HOUSTON, SEE, and BROWN, JJ., concur.
LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., dissent.
*752 LYONS, Justice (dissenting).
The agreement gave Life of Georgia the right to withdraw from the sale of any policy merely by giving written notice to MIS. However, once its representatives responded to MIS's direct inquiries about Life of Georgia's future plans with assurances rather than a reminder of the absence of any obligation, under its contract, to disclose its future plans, Life of Georgia waived the right to rely on this feature of the agreement as a defense to a fraud claim. Had Life of Georgia responded, "None of your business," or with more politely phrased words of similar import, it would have been acting in conformity with its agreement, and this lawsuit would have been unnecessary. However, Life of Georgia chose to try to have it both ways, a contractually based right to silence and oral behavior inconsistent with its rights under the contract. I respectfully dissent.
JOHNSTONE, J., concurs.
NOTES
[1] The Agreement provided that Life of Georgia could withdraw a policy from sale at any time upon written notice to MIS.