879 So.2d 1129 (2003)
POLARIS SALES, INC.
v.
HERITAGE IMPORTS, INC.
1021166.
Supreme Court of Alabama.
October 3, 2003.
*1130 David L. Kane of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, for appellant.
Braxton L. Kittrell of Gardner, Middlebrooks, Gibbons & Kittrell, P.C., Mobile; and David A. Bagwell, Fairhope, for appellee.
HOUSTON, Justice.
Polaris Sales, Inc., appeals from an order denying its motion to compel arbitration of a dispute with Heritage Imports, Inc.[1] We reverse and remand.

*1131 I. Facts and Procedural History

Polaris is a Minnesota corporation engaged in the sale and distribution of recreational vehicles, including personal watercraft and all-terrain vehicles, to independent dealers who are authorized to sell "Polaris products"[2] to retail customers. Heritage, which is located in Fairhope, Alabama, is engaged in the business of selling recreational vehicles to retail customers.
Heritage and Polaris entered into an agreement pursuant to which Heritage was appointed as a dealer to sell certain Polaris products from its store in Fairhope and Polaris agreed to sell those Polaris products to Heritage for resale to retail customers ("the dealer agreement"). In the dealer agreement, Heritage and Polaris contracted to arbitrate the following:
"All disputes, controversies, and claims arising out of or in connection with the. . . interpretation . . . of this Agreement, or of any provision of this Agreement (including without limitation this arbitration provision and the arbitrability of any issue), or arising out of or in connection with any claimed duty, right, or remedy (whether arising under this Agreement or any statute, regulation, ordinance, or other rule of law or otherwise) relating to any of the foregoing. . . ."
The dealer agreement also stated:
"Polaris reserves the right to appoint any other dealers at any other location in its sole discretion. [Heritage] acknowledges it has not been granted any area of primary responsibility or of exclusivity.
". . . .
"[Heritage] may not assign, transfer or sell all or any part of its rights or obligations under this Agreement without first providing Polaris with prior written notice and receiving the prior written consent of Polaris. Any attempt to do so without such prior written consent shall be wholly void and without effect. If [Heritage] desires to assign, transfer, or sell any rights, arising under any applicable law, regarding resale of the Products, Polaris will have the first option to acquire any such rights. If [Heritage] desires to seek written consent from Polaris to assign, transfer or sell all or any part of its rights or obligations under this Agreement, [Heritage] must have submitted all information required in the New Dealer Packet. [Heritage] acknowledges that Polaris cannot and will not begin to review the applicant's qualifications until all such information is submitted. This Agreement shall be binding upon and inure to the benefit of the permitted successors and assigns of [Heritage] and the successors and assigns of Polaris."
This action began as an effort to collect money Heritage owed Polaris Acceptance ("Acceptance"), arising out of Heritage's failure to repay Acceptance for money Acceptance had advanced Heritage to purchase inventory from Polaris. Heritage expanded the action by adding Polaris as a third-party defendant and asserting a cross-claim against Polaris and a counter-claim against Acceptance alleging intentional interference with a contract.
Heritage's cross-claim alleges that Heritage and a third party entered into a contract pursuant to which the third party agreed to purchase Heritage's recreational-vehicle dealership, its inventory, and its franchise rights. This contract allegedly included a clause stating that the transaction *1132 was contingent upon Polaris's approval. Heritage claims that Polaris intentionally interfered with this contract by inducing the third party to dishonor its contract with Heritage and to contract directly with Polaris.
Polaris moved the trial court to compel arbitration of Heritage's cross-claim, based on the arbitration provision in the dealer agreement. The trial court granted Polaris's motion to compel arbitration and transferred the action to the administrative docket pending the completion of arbitration. Approximately four months later, Polaris moved the lower court to dismiss Heritage's cross-claim against it on the ground that Heritage failed to prosecute its claim because it had failed to initiate arbitration proceedings.
In response to Polaris's motion to dismiss, Heritage moved the court to dissolve the stay and to reinstate the case on the active docket. The court, in response to Heritage's motion, vacated its earlier order compelling arbitration. Polaris appeals.

II. Analysis
Appellate review of an order denying a motion to compel arbitration is de novo. Kenworth of Birmingham, Inc. v. Langley, 828 So.2d 288, 290 (Ala.2002). The party seeking to compel arbitration has the initial burden of proving the existence of a written contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce. Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458 (Ala.2002). "`"[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."'" Langley, 828 So.2d at 290 (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000), quoting in turn Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995)). The parties here do not dispute the existence of a contract calling for arbitration or that the contract involves interstate commerce.
The issues raised on appeal are: 1) whether the requirement in the dealer agreement that the arbitration proceeding take place in Minnesota and under Minnesota law is unconscionable, and 2) whether the arbitrator should decide the issue of arbitrability.

A. Are the forum-selection and choice-of-law clauses in the dealer agreement unconscionable?[3]

1. Forum-Selection Clause
Heritage argues that the arbitration provision contained in the dealer agreement is unconscionable because it requires the arbitration proceeding to take place in Minneapolis and that Minnesota law be applied. The trial court agreed with Heritage, stating that "the requirement that the arbitration occur in the State of Minnesota and under those laws is a clause that causes such undue hardship that it in effect is being used to prohibit anyone in contract with [Polaris] from bringing any action against it."
Heritage's argument and the trial court's conclusion are contrary to the well-established law of Alabama that forum-selection clauses will be enforced so long as they are not unfair or unreasonable under the circumstances. Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 351 (Ala.1997). In Ex parte Northern Capital Resource Corp., 751 So.2d 12, 14 (Ala.1999), we set forth five factors a court should consider when determining whether a forum-selection clause is unreasonable:

*1133 "(1) Are the parties business entities or businesspersons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should the parties have been able to understand the agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient?"
Here, the answers to these questions show overwhelmingly that enforcement of the forum-selection clause would not be unreasonable. Both parties are business entities. The subject matter of the contract is the purchase by Heritage of recreational vehicles from Polaris for resale to retail customers. Polaris is headquartered in Minneapolis. There is no evidence indicating that either party did not or could not have understood the agreement as it was written. Finally, there is no evidence indicating that extraordinary facts have arisen since the agreement was entered into that would make Minneapolis seriously inconvenient as a forum. Therefore, the forum-selection clause is valid and enforceable.

2. Choice-of-Law Clause
Heritage and the trial court also cite the choice-of-law clause requiring that Minnesota law be applied to any dispute as a basis for invalidating the arbitration provision. This, too, is contrary to settled Alabama law. "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991). The trial court, therefore, erred in holding that conducting the arbitration in Minneapolis and applying Minnesota law would result in such undue hardship as to invalidate the arbitration agreement.

B. Should the arbitrator decide the question of arbitrability?
The next issue raised is whether the arbitrator should decide the arbitrability of Heritage's claim. Questions of arbitrability include those relating to the scope, interpretation, and application of the arbitration agreement, Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122, 132 (Ala.2002), as well as the issue whether a party has waived its right to demand arbitration by "substantially invok[ing] the litigation process." Hales v. ProEquities, Inc., [Ms. 1011015, July 11, 2003] ___ So.2d ___, ___ (Ala.2003). "A trial court should not order arbitration of the issue of arbitrability except upon `"clea[r] and unmistakabl[e]" evidence' that the parties agreed to arbitrate that issue." Jim Burke Auto., 826 So.2d at 132 (quoting Commercial Credit Corp. v. Leggett, 744 So.2d 890, 892 (Ala.1999), quoting in turn First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Such clear and unmistakable evidence exists here.
Arbitration is a contract matter, and one cannot be compelled to submit to arbitration any matter that one has not agreed to so submit. Central Reserve Life Ins. Co. v. Fox, 869 So.2d 1124 (Ala.2003). In deciding whether parties agreed to arbitrate the question of arbitrability, courts should apply the ordinary state-law principles that govern contract formation. Id. (quoting Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala.2000)).
When a court construes a contract, "the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state." Strickland v. Rahaim, 549 So.2d 58, 60 (Ala.1989). The arbitration clause in the dealer agreement between Heritage and *1134 Polaris provides that "all disputes, controversies, and claims arising out of or in connection with . . . this Agreement . . . (including without limitation this arbitration provision and the arbitrability of any issue) . . . shall be solely and finally settled by arbitration." Thus, the plain language of the agreement unquestionably shows that in this case Heritage and Polaris agreed to arbitrate the issue of arbitrability. Therefore, any questions of arbitrability relating to Heritage's claim are for an arbitrator to decide.

III. Conclusion
The trial court erred in refusing to compel arbitration of Heritage's claim. Therefore, we reverse the order denying Polaris's motion to compel arbitration and remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
I write specially to note that doubts as to the scope of arbitration must be resolved in favor of arbitrability. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Here, any doubt as to the authority of the arbitrator to determine the arbitrability of this dispute must be resolved in favor of the arbitrator's authority to determine that issue. Our threshold determination that it is for the arbitrator to decide arbitrability should not be taken as a determination on the merits of the question as to whether the dealer agreement is broad enough to encompass arbitration of the dispute between Polaris and Heritage alleging interference with Heritage's relationship with a third party.
Having said that, I am not naive enough to think that it will be easy to obtain an order from an arbitrator at the outset of the proceedings that would render the arbitrator's further involvement unnecessary. Nor am I by any means the first to take note of the practical aspects of allowing an arbitrator to determine whether the arbitration should proceed. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 416, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (Black, J., dissenting) ("The only advantage of submitting the issue of fraud to arbitration is for the arbitrators. Their compensation corresponds to the volume of arbitration they perform. If they determine that a contract is void because of fraud, there is nothing further for them to arbitrate. I think it raises serious questions of due process to submit to an arbitrator an issue which will determine his compensation."). The same can be said of submitting the issue of arbitrability to the arbitrator. But, alas, the law of the land is otherwise.
NOTES
[1] The Court notes that although both parties' briefs were helpful, Heritage's was a little more "down home" than the briefs usually received by this Court, a characteristic that in no way helped or hurt Heritage. For example, Heritage's brief included the following statements: "Polaris sent a guy down here and told Kevin Clark to weasel out of the Heritage-Clark contract" (Heritage's brief, p. 6) (hereinafter page numbers cited in this footnote refer to Heritage's brief); "if in appellant's reply brief it should `drop the pigeon'" (p. 18); "We aren't blind to the law. . . we've been around; come on" (p. 20); "entangling Sargasso Sea of the law of arbitration" (p. 22); "we would have had a slamdunk" (p. 24); "Well, yes; we have that rule here, too. Big deal" (p. 26); "I mean come on now . . . it would sound snippy" (p. 29); "An agreement to arbitrate arbitrability just cannot become The Eggplant That Ate Chicago" (p. 30); "Plus, it would be plumb unfair to Heritage" (p. 31).
[2] It is unclear from the record which Polaris entity manufactures the "Polaris products."
[3] On appeal, Polaris does not raise the issue whether the arbitrator should decide if the forum-selection and choice-of-law clauses are unconscionable.