973 So.2d 1050 (2007)
TITLE MAX OF BIRMINGHAM, INC.
v.
Jeffrey T. EDWARDS.
1051140.
Supreme Court of Alabama.
May 18, 2007.
*1051 Jeffrey Ingram and Cassandra J. Harris of Galese & Ingram, P.C., Birmingham, for appellant.
Edwin M. Van Dall, Jr., and Julius Raymond Lowery, Pell City, for appellee.
SEE, Justice.
Title Max of Birmingham, Inc., appeals the denial of its motion to compel Jeffrey T. Edwards to arbitrate his claims against Title Max alleging conversion and negligence in connection with the repossession of a 1998 model year Ford F-150 pickup truck. Because the trial court erred in failing to compel Edwards to arbitrate, w reverse and remand.

Facts and Procedural Background
Edwards entered into a pawn transaction with Title Max, pledging a security interest in his 2000 model year Ford 150 extended cab truck in exchange for a loan. Edwards had a 30-day grace period following the maturity date of the loan in which to repay the loan and to pay the other charges. The agreement evidencing *1052 the transaction ("the pawn agreement") gave Title Max the right to repossess the truck if the loan was not repaid and the other charges paid before the expiration of the grace period. Edwards defaulted on the loan. Pursuant to its contractual right, Title Max sent its agent, Jack Burke, to repossess the truck.
According to Edwards, Burke arrived at Edwards's house and informed him that he was repossessing the truck. When the key Title Max had given Burke to use in repossessing the truck did not fit the door or the ignition of the truck in Edwards's driveway, Burke had the truck towed away; the truck he had towed was a 1998 model year Ford F-150. Later, when Burke realized that he had repossessed the wrong truck, he left the 1998 truck at a gasoline station and returned to Edwards's house to inform Edwards of the mistake and to tell him where he had left his truck. Eventually, the police instructed Burke to return the truck to Edwards, but, according to Edwards, by that time the truck had been damaged and would no longer start.
Edwards sued Title Max and Burke in the Talladega Circuit Court, alleging conversion of the 1998 truck and negligent repossession. Title Max moved to stay the action and to compel binding arbitration pursuant to an arbitration provision that Edwards had signed as part of the pawn agreement. The arbitration provision reads, in pertinent part, as follows:
"For the purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter `Arbitration Provision'), the words `dispute' and `disputes' are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, [and] the validity and scope of this Arbitration Provision . . .; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Pawn Ticket . . .; (d) all common law claims, based upon contract tort, fraud, or other intentional torts; (g) all claims asserted by you individually against us . . . including claims for money damages and/or equitable or injunctive relief;. . . .
". . . This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the [Federal Arbitration Act]."
The trial court denied Title Max's motion to compel Edwards to submit the dispute to arbitration. Title Max appeals.

Standard of Review
"A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration." Homes of Legend, Inc. v. McCollough, 776 So.2d. 741, 745 (Ala.2000); Rule 4(d), Ala. R.App. P. We review the trial court's grant or denial of a motion to compel arbitration de novo. Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala.2003). The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala.2003). The moving party "`"must produce some evidence which tends to establish its claim."'" Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala.2003) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala. 1995), quoting in turn In re American Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan.1994)). Once the moving party meets this initial burden, the nonmovant then has the burden to present evidence tending to show that the arbitration agreement *1053 is invalid or inapplicable to the case. Polaris, 879 So.2d at 1132.

Analysis
The issue presented by this appeal is whether a court or the arbitrators should determine the scope of the arbitration provision in this case and whether it includes Edwards's claims against Title Max. Title Max argues that the parties agreed to arbitrate the arbitrability of any dispute between them and that the arbitration provision in the pawn agreement, quoted in part above, is broad enough to require Edwards to arbitrate his claims of conversion and negligent repossession. Edwards argues that the property that forms the basis of his claims against Title Max is the 1998 model year Ford F-150 truck and that there is no contract concerning that property; he asserts, therefore, that "[t]here is no privity between the parties concerning the transaction which gave rise to the lawsuit." Edwards's brief at 5.
Section 2 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., provides, in pertinent part:
"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
Section 2 has the effect of preempting conflicting Alabama law, in particular § 8-1-41(3), Ala.Code 1975, which makes predispute agreements to arbitrate unenforceable. Garikes, Wilson, & Atkinson, Inc. v. Episcopal Found. of Jefferson County, Inc., 614 So.2d 447, 448 (Ala.1993). It thereby makes enforceable a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce. McCollough, 776 So.2d at 745.
Title Max had the initial burden of producing "some evidence" that a contract calling for arbitration exists and that the underlying transaction involves interstate commerce. Polaris, 879 So.2d at 1132. Edwards does not question that the pawn transaction involved interstate commerce; therefore, we turn to whether a contract requiring the arbitration of this dispute exists. The arbitration provision, quoted above, appears in the record. Edwards does not dispute that he signed an arbitration provision as part of the pawn transaction that gave Title Max a security interest in the 2000 model year Ford F-150. The arbitration provision on its face applies to "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision" as well as to "all claims asserted by [Edwards] individually against [Title Max]." Title. Max, therefore, has put forward sufficient evidence indicating that it and Edwards entered into a contract that contains an arbitration agreement.
Because Title Max met its burden to prove the existence of a contract calling for arbitration, the burden then shifted to Edwards "to present evidence showing that the arbitration provision in the contract does not apply to the dispute in question." Medical Servs., LLC v. GMW & Co., 969 So.2d 158, 161 (Ala.2006). Edwards argues that the arbitration provision does not apply to "other property" in his possession, that is, to property other than the 2000 model year Ford F-150 truck, the title to which he pawned when he entered the pawn agreement. Therefore, he argues, there is no contract requiring arbitration regarding any claims he might have against Title Max and Burke relating to the 1998 model year Ford F-150 truck.
"[A] party who contests the existence of a contract containing an arbitration *1054 provision cannot be compelled to arbitrate that threshold issue because an arbitrator derives his authority solely from the parties' agreement. Only a court can resolve the question whether a contract exists." Edward D. Jones & Co. v. Ventura, 907 So.2d 1035, 1040 (Ala. 2005). However, Edwards does not contest that he signed a contract with Title Max containing an arbitration provision; instead, he essentially argues that his claims do not fall within the scope of the arbitration provision he signed. Arbitration is a matter of contract, and this Court applies the ordinary state-law principles governing contracts in construing an agreement to arbitrate. Polaris Sales, 879 So.2d at 1133. "`When a court construes a contract, "the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state."'" H & S Homes, L.L.C. v. Shaner, 940 So.2d 981, 988 (Ala. 2006) (quoting Polaris Sales, 879 So.2d at 1133, quoting in turn Strickland v. Rahaim, 549 So.2d 58, 60 (Ala.1989)). "`[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself' resolved in favor of arbitration.'" McCollough, 776 So.2d at 745 (quoting Volt Info. Sciences, Inc. v. Board of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 475-76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).
In Jim Burke Automotive, Inc. v. McGrue, 826 So.2d 122 (Ala.2002), this Court confronted the question whether the parties intended to arbitrate the issue of arbitrability. The arbitration agreement there provided that the parties would arbitrate "all disputes . . . including but not limited to: the terms of this agreement and all clauses herein contained, their breadth and scope. . . ." 826 So.2d at 132. We held that "[t]he language of the arbitration agreement is clear and unmistakable evidence indicating that McGrue and Jim Burke intended to arbitrate the question of arbitrability (i.e., the scope, the interpretation, and the application of the agreement) of any disputes that arose from their relationship." Jim Burke Automotive, 826 So.2d at 132. For this reason, we held that the trial court erred when it decided the question of the arbitrability of McGrue's claims against Jim Burke instead of submitting the question to the arbitrator.
We have held that "[a] trial court should not order arbitration of the issue of arbitrability except upon `"clea[r] and unmistakabl[e]" evidence' that the parties agreed to arbitrate that issue." Jim Burke Automotive, 826 So.2d at 132 (quoting Commercial Credit Corp. v. Leggett, 744 So.2d 890, 892 (Ala.1999), quoting in turn First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)) (alterations in original). Here, Edwards agreed to arbitrate "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, [and] the validity and scope of this Arbitration Provision. . . ." The arbitration provision thus demonstrates that the parties intended to arbitrate whether the agreement applies to "any disputes that arose from their relationship."[1]Jim *1055 Burke Automotive, 826 So.2d at 127. We reject the argument that the trial court should hold that the arbitration provision does not apply because there is no contract relating to the 1998 model year Ford F-150.[2] It was improper for the trial court to *1056 decide the issue of arbitrability in this case because Edwards agreed to submit to arbitration any questions regarding "the validity and scope of this Arbitration Provision."[3]
Because we hold that the parties agreed to arbitrate the question of the scope of the arbitration provision, we do not reach Title Max's alternative argument that the terms of the arbitration provision are broad enough to encompass Edwards's claims of conversion and negligent repossession. See Jim Burke Auto., 826 So.2d at 132 ("Because we hold that the trial court improperly decided the question of the arbitrability of McGrue's claims against Jim Burke, we must also hold that the issue whether those claims come within the agreement is not before us. That question is within the province of the arbitrator.").

Conclusion
The parties agreed to arbitrate the issue of the validity and scope of the arbitration provision contained in the pawn agreement; therefore, the trial court erred in denying Title Max's motion to stay the proceedings and to compel binding arbitration. For this reason, the order is reversed and this case remanded with directions to grant Title Max's motion to stay proceedings and to compel binding arbitration.
REVERSED AND REMANDED WITH DIRECTIONS.
LYONS, WOODALL, STUART,
SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., concurs specially. MURDOCK, J., concurs in the result.
COBB, Chief Justice (concurring specially).
Current Alabama law applied to the facts of the case produces a result that is deeply troubling. It is my belief that not only did Edwards not intend to compel his future conversion claim to arbitration, but also current arbitration law provides too broad an application of agreements to arbitrate. Although I realize that well-established *1057 Alabama law confines judicial review of a contract to the four corners of the contract and rejects subjective review of the parties' intent, the resulting overly broad application of arbitration agreements, such as in the instant case, is nonetheless unjust.
The arbitration provision here is written in an attempt to encompass any conceivable scenario that might result in civil litigation and to refer the dispute resulting from such a scenario to a panel of arbitrators for resolution. The broad language of the arbitration provision militates strongly against each citizen's right to a jury trial as guaranteed by our state and federal constitutions. U.S. Const. Amend. VII; Ala. Const.1901, § 11. I believe that this Court's duty is to construe strictly documents that are in plain derogation of constitutional rights. However, this Court's decision to bind these parties to arbitration based on the language of the arbitration provision is supported by its similar holding in Jim Burke Automotive, Inc. v. McGrue, 826 SO.2d 122 (Ala.2002). In Jim Burke Automotive, the Court interpreted an arbitration agreement with language similar to the language here as holding that the parties intended to arbitrate "any disputes that arose from [the parties] relationship." 826 So.2d at 132. Applying that caselaw to the instant case results in a holding that the parties' agreement to arbitrate the scope of the arbitration provision requires that the conversion and negligent-repossession issues raised in this case, issues that are entirely distinct from the pawn agreement, must be submitted to binding arbitration. That result simply flies in the face of what the parties were doing in this pawn agreement. It is highly unlikely that Edwards, upon signing the instant arbitration provision, foresaw that he was engaged in an act of interstate commerce that would deprive him of his right to a jury trial if Title Max wrongfully repossessed property to which it had no contractual right. The 1998 model year Ford F-150 truck Title Max wrongfully repossessed was subject to no agreement between the parties. Nothing about that vehicle was related to the pawn agreement in this case.
Arbitration agreements like the one at issue here compel to arbitration almost any claim arising between the parties. It is difficult even to imagine any legal claim that might arise that would not be included in the arbitration provision at hand, which covers "(d) all common law claims, based upon contract tort, fraud, or other intentional torts; . . . (g) all claims asserted by you individually against us . . . including claims for money damages and/or equitable, injunctive relief. . . ." Thus, this Court's deference to an unduly broad policy in favor of arbitration provides injustice an opportunity to prosper. If Edwards had been assaulted by the agent repossessing the wrong vehicle, it would be unfair to compel him to arbitrate his resulting legal claim. If the repossessing agent had stolen a family heirloom while on Edwards's property, it would be unfair to compel Edwards to arbitrate his claim against the agent. However, in light of Discount Foods, Inc. v. Supervalu, 789 So.2d 842 (Ala.2001), in which this Court compelled to arbitration an intentional-tort claim unrelated to the underlying transaction, Edwards's consent to the plain language of the arbitration provision indicates by the "clear and unmistakable evidence" standard set out in Jim Burke Automotive Edwards's willingness to submit all claims arising between the parties to arbitration. Jim Burke Automotive, 826 So.2d at 132. Presumably, the Court would not permit the drafter of a contract simply to state that the parties to the contract would thereafter be required to arbitrate all disputes, whether related to the underlying transaction or not.
*1058 In Mehler v. Terminix International Co., 205 F.3d 44 (2d Cir.2000), the United States Court of Appeals for the Second Circuit bound the parties to arbitration after determining that the plaintiffs' claims resulting from an accident that occurred during the termite-extermination process were encompassed by the arbitration agreement. However, in Mehler the court applied a more just standard to determine the scope of the arbitration agreement than the one this Court applies today. The Mehler court examined the issue of the scope of the arbitration agreement by determining if the claim arose out of or related to the contract; in doing so, it summarized the holding in Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 29 (2d Cir.1995), as follows:
"[T]he key inquiry is what was the reasonable expectation of the parties who commit themselves to be bound by the provisions of the arbitration agreement."
Mehler, 205 F.3d at 50.
Justice See describes my suggestion above as advocating the exercise of "more pliable jurisprudence," 973 So.2d at 1054-55 n. 1; it is, however, more just jurisprudence that I suggest. In light of the Court's longstanding tradition of upholding just contracts, I believe that the Court should give effect to the parties' actual intent. As I have stated, it was not reasonable for Edwards to expect to be compelled to arbitrate a claim regarding property to which Title Max had no claim. In the context of this case, I believe that the waiver of the right to a jury trial should be limited to a much narrower construction of what relates, either directly or indirectly, to this pawn transactiona construction that would be in accord with what the parties might reasonably expect.
NOTES
[1] Where contract terms are unambiguous, we do not look beyond the plain language of the contract to second-guess the intentions of the parties; nor will we speculate about what may have been the subjective expectations of the parties. See Harbison v. Strickland, 900 So.2d 385, 391 (Ala.2004) ("`[I]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation.'" (quoting Kinmon v. J.P. King Auction Co., 290 Ala. 323, 325, 276 So.2d 569, 570 (1973)) ); Turner v. West Ridge Apartments, Inc., 893 So.2d 332, 335 (Ala.2004) ("`[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state.'" (quoting Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998)) ); Lilley v. Gonzales, 417 So.2d 161, 163 (Ala.1982) ("[T]he law of contracts is premised upon an objective rather than, a subjective manifestation of intent approach."). Chief Justice Cobb, in her special writing, suggests that this Court should exercise a more pliable jurisprudence and look beyond the four corners of the arbitration agreement, calculate what consequences one of the parties likely did not foresee, and effectuate, instead of the express terms of the contract, the "`reasonable expectation of the parties who commit themselves to be bound by the provisions of the arbitration agreement.'" 973 So.2d at 1058 (Cobb, C.J., concurring specially) (quoting Mehler v. Terminix Ina Co., 205 F.3d 44, 50 (2d Cir.2000), summarizing Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 29 (2d Cir. 1995)).

The Supreme Court of the United States tells us that "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed `upon the same footing as other contracts.'" Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)). Thus, because we cannot single out arbitration clauses for special scrutiny, any rule that we would adopt to achieve the objective of judicially altering the terms of an arbitration agreement would necessarily apply to all contracts. However, the Constitution of Alabama prohibits this Court from substituting its "belief" as to what one of the parties did or did not intend for the express terms to which both parties agreed in a contract and thereby impairing the obligation of contracts. Ala. Const.1901, Art. IV, § 95 ("There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement. . . . ").
The freedom of parties to contract is an important public policy written into the state constitution and adopted by the people of Alabama. It is a significant liberty interest that is expressly protected in the constitution. This Court has recognized that "`the state constitution protects contractual obligations from impairment by the legislature or the judiciary, and the right of freedom of contract is a cherished one that courts arc bound to protect.'" Ex parte Life Ins. Co. of Georgia, 810 So.2d 744, 751 (Ala.2001) (quoting Sutton v. Epperson, 631 So.2d 832, 835 (Ala.1993)).
"Even under What may seem to be the most compelling circumstances, [courts] may not `refine away the terms of the contract that are expressed with sufficient clarity to convey the intent and meaning of the parties.' Kinnon v. Universal Underwriters Ins. Co., 418 So.2d [887,] 888 [ (Ala.1982)]. `It is not a function of the courts to make new contracts for the parties, or raise doubts where none exist.' Commercial Union Ins. Co. v. Rose's Stores, 411 So.2d 122, 124 (Ala.1982)."
Johnson v. Cervera, 508 So.2d 257, 259 (Ala. 1987).
[2] Chief Justice Cobb's special writing cites as a model for this Court the decision of the United States Court of Appeals for the Second Circuit in Mehler v. Terminix Int'l Co., 205 F.3d 44, 50 (2d Cir.2000), reciting from Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 29 (2d Cir.1995), that "the key inquiry is what was the reasonable expectation of the parties who commit themselves to be bound by the provisions of the arbitration agreement." The Second Circuit, however, chose not to apply the earlier language found in Leadertex, citing it only in a string citation indicating contrary authority. In Mehler, where the defendant punctured a homeowner's underground heating-oil line while performing a termite examination, the Second Circuit held that this injury, which presumably was not specifically contemplated by the homeowner, nonetheless was within the scope of the arbitration agreement because

"the arbitration clause at issue is a classically broad one. The clause provides for arbitration of `any controversy or claim between [the parties] arising out of or relating to' the Agreement. We have previously decided that this is `precisely the kind of broad arbitration clause that justifies a presumption of arbitrability.'"
205 F.3d at 49 (citations omitted). The arbitration provision that Edwards executed is similarly broad.
[3] Both this Court and the federal courts of appeals have held that a court's enforcement of an arbitration agreement does not violate the protections established by the Seventh Amendment to the Constitution of the United States. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1371 (11th Cir.2005). "Nor does the fact that the appellees waived their right to a jury trial require the court to evaluate the agreement to arbitrate under a more demanding standard. It is clear that a party may waive her right to adjudicate disputes in a judicial forum. . . . [T]he `loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'" Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 307 (4th Cir.2001) (quoting Pierson v. Dean, Witter, Reynolds, Inc., 742 F.2d 334, 339 (7th Cir.1984)); see also Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483, 492 (6th Cir.2001) (following Sydnor), and Service Corp. Int'l v. Fulmer, 883 So.2d 621, 633 n. 15 (Ala.2003) ("A party may freely choose to give up his constitutional right to a jury trial even when doing so is required to receive some good or service. . . ."). Moreover, Alabama law and policy to the contrary must yield, to the federal policy. Section 2 of the Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Supremacy Clause of the Constitution of the United States prohibits this Court from rejecting those federal policies with which it may disagree, See U.S. Const. Art. VI.